*606 OPINION.
Littleton:
The questions presented in this appeal are: (1) Whether the Commissioner was correct in computing depreciation based upon the life of the buildings purchased or erected upon leased land, or whether the cost of such buildings should be depreciated over the life of the lease in force during the taxable years involved; (2) if the method used by the Commissioner was correct, whether the rate of 1 per cent is reasonable; and (3) whether the taxpayer and the Stuyvesant Glass Co., Inc., were affiliated during the years 1918, 1919, and 1920 ?
Under the facts hereinbefore set forth we are of the opinion that the Commissioner was correct in basing the allowance for exhaustion, wear and tear of the buildings upon the probable useful life thereof, instead of upon the term of the lease covering the land upon which such buildings were erected or located at the time they were purchased by the taxpayer. The leases covering the land upon which they were located provided that the lessor should have full liberty and choice either to grant a renewal of the leases for a further term of 21 years at a rental not less than that provided in the then existing lease, but not in excess of 5 per cent of the appraised value of the vacant lot, to be determined by the appraisers, or, in the event the lessor should choose not to renew the lease, he should pay to the lessee an amo'unt equal to the value of the buildings to be determined by appraisers, and that the lessee should not be compelled to surrender the premises until the payment of the appraised value of the buildings had been made or tendered by the lessor.
*607 The annual allowance for exhaustion, wear and tear is for the purpose of permitting the taxpayer to -recover its investment in the property at the end of its useful life in the business. Upon the facts in this appeal, we can find no justification in the statute for permitting the taxpayer to charge off during the term of the lease, as wear, tear, and exhaustion, the entire cost of the buildings located upon leased land, because it may be required under the terms of its agreement to receive an amount equal to the appraised value of the buildings at the end of 21 years instead of a renewal of the lease on the land on which such buildings are located.
The taxpayer contends that it should be permitted to exhaust the cost of the property over the period of 21 years. The Commissioner contends that, in view of the provisions of the leases with reference to the purchase of the property by the lessor or the renewal of the leases at the end of 21 years, the deduction for exhaustion of the property should be computed upon the physical life of the property and not upon the basis that taxpayer’s investment in the property will be lost at the end of 21 years from the date of the original leasés.
We are of the opinion that, under the provisions of the leases in effect during the taxable years, the deduction for exhaustion was correctly based 'upon the physical life of the property. The deduction for exhaustion of the cost of the property located upon leased premises is governed by the provisions of each particular lease. Had the leases here involved been for a term of 21 years without the right of renewal, or the right of the taxpayer to receive the appraised value of the property upon their expiration, the taxpayer would have been entitled to a deduction for exhaustion over a term of 21 years. Had the leases contained only the provision that upon their expiration they should be renewed for another term of 21 years, the deduction to which the taxpayer would have been entitled over the term of the first leases would be upon the basis of the expected 'useful life of the property in the business of 42 years, and the deduction during the term of the second leases would be dependent upon the provisions of such leases, and so on until the taxpayer shall have recovered its investment. The leases here involved, however, are peculiar in that they did not definitely provide either for the receipt by the taxpayer of the value of the property upon their termination or for a renewal for another term of 21 years. The result of this, therefore, is that during the term of the first leases the taxpayer is entitled only lo a deduction for exhaustion based upon the physical life of the property. If, however, upon the expiration of the present leases the lessor elects to renew them, the taxpayer will then be entitled to exhaust the un-extinguished cost over the expected useful life of the property in its business, depending 'upon the provisions of the leases.
*608 The Commissioner found that the buildings erected by the taxpayer in 1907-8 and in 1917-18 had a probable useful life of 100 years, and allowed depreciation at the rate of 1 per cent per annum; that the buildings purchased in 1914, which had been erected in 1886 and in 1896, had a remaining useful life of 50 years, and allowed depreciation at the rate of 2 per cent per annum. Taxpayer, however, claims depreciation on the building erected in 1907-8 at the rate of 4 per cent per annum; upon the building erected in 1917-18 at the rate of 3 per cent per annum; and upon the buildings erected in 1886 and 1896, and purchased in 1914, at the rate of 4.55 per cent and 3.12 per cent, respectively.
The only evidence before the Board that the allowance for exhaustion, wear and tear determined by the Commissioner is unreasonable, is the opinion of the secretary of the taxpayer, who could not qualify as an expert on real estate, that the probable life of the buildings in question was considerably less than that determined by the Commissioner. Upon this evidence the Board is asked to increase the allowance for exhaustion, wear and tear from 1 per cent and 2 per cent to 3 per cent, 3.12 per cent, 4 per cent, and 4.55 per cent per annum, respectively.
A determination made by the Commissioner is prima facie correct.
Upon the evidence submitted bjr the taxpayer the Board is unable to determine that it is entitled to an annual allowance for exhaustion, wear and tear in excess of that determined by the Commissioner. We can not reject the rate determined by the Commissioner in the absence of evidence that the useful life of the buildings is less than that determined by him. We are forced, therefore, upon the evidence in this appeal to approve the Commissioner’s allowance for exhaustion, wear and tear of the buildings in question.
Under the evidence of record, the Board is of the opinion that the taxpayer and the Stuyvesant Glass Co., Inc., were affiliated during the years 1918, 1919, and 1920. It appears that the taxpayer -was greatly in need of the services of an expert glass grinder. Finding that it could secure the services of William Wiegand, who was Avell known to the taxpayer as an expert in that line, providing that it would agree to place him in charge of that branch of the business, and believing that the success of the glass-blowing department of the business depended upon its being able to employ Wiegand, that department was thereupon separately incorporated solely with a view that, under such circumstances, Wiegand would be better satisfied in his emplojunent and that the glass-blowing department would thereby be more productive of profits. Upon incorporation the entire capital stock of the Stuyvesant Glass Co., Inc., was issued to the taxpayer, 10 shares of which it gave to Wiegand as an *609 incentive for making the glass-blowing department a success and, later, 56% additional shares for.the same reason, on condition, however, that it should have the entire management of the business and control of the stock, and, on the further condition, that should the said Wiegand resign said stock should be returned to the taxpayer without compensation. It was also further agreed between the taxpayer and Wiegand that if the taxpayer should discontinue the Stuyvesant Glass Co., Inc., before the expiration of his term' of employment, he would be employed by the taxpayer during the remainder of the term of his contract of employment with the Stuyvesant Glass Co., Inc. The taxpayer conducted the entire business of the Stuyvesant Glass Co., Inc., as a part of its own operation. The Stuyvesant Glass Co., Inc., bought all of its supplies and sold its entire output to the taxpayer. The two corporations were operated as a single business unit.
AeuNdell not participating.