APPEAL OF WADDELL COAL CO.

Docket No. 3133.     Submitted June 13, 1925.     Decided November 25, 1925.

Evidence *held* insufficient to sustain taxpayer's claim for obsolescense of mining equipment.

*Don F. Reed, Esq.*, for the taxpayer.
*Lee I. Park, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency for the calendar year 1920 in the amount of $25,098.03, against which is offset an overassessment of $2,095.50 for the calendar year 1918. No deficiency was determined by the Commissioner for the calendar year 1919, in which year the taxpayer had a net loss of $28,559.91, which was applied against the year 1918 under section 204 of the Revenue Act of 1918.

The taxpayer alleged that the Commissioner erred (1) in failing to allow as a deduction from gross income for each of the years 1918, 1919, and 1920, a proper amount for obsolescence of property upon its claim that the life of the coal mine, in the operation of which the property was used, was shorter than the physical life of the property; and (2) in basing the allowance for exhaustion, wear and tear upon the physical life of the property rather than upon the life of the coal mine.

FINDINGS OF FACT.

Taxpayer is a West Virginia corporation engaged in the business of mining and selling coal, with principal place of business at

Philippi. At the time of its organization in July, 1917, it acquired a lease to 371 acres of coal land at Philippi, Barbour County, W. Va., theretofore granted to the Humphreys Coal Co., on August 29, 1908, for a period of 30 years, with the right of renewal under certain circumstances. This lease provides for a royalty of 10 cents a ton. The provisions pertinent to this appeal are as follows:

Third. The lessee hereby covenants that he will mine the coal in the Mahoning and Freeport seams of coal, and shall also mine the coal from any and all other seams found on the demised premises, the mining of the coal from each of said seams to be carried on in such a way as to recover the greatest possible amount of coal from each and all of said seams, and in such manner that the mining on any one of the said seams shall not injure or destroy any other seam of coal, or prevent the mining thereof; but the lessee shall not be obliged to mine any seam of coal which does not contain between the top and bottom of the seam a sectional height of thirty-six (36) inches of coal commercially valuable. All the agreements, conditions and stipulations, rents and royalties contained and retained herein shall refer to all of the said seams of coal and the coal taken therefrom.

\*        \*        \*        \*        \*        \*        \*

Sixth. The lessee covenants and agrees to prosecute his mining operations upon the demised premises actively and diligently, and in careful, skillful and workmanlike manner, according to the rules of good mining and the laws of the State of West Virginia, and to mine all the merchantable coal that can be practicably mined with profit to him and the lessors, and will leave no more available coal in pillars and supports for the mine openings and workings than may be necessary for their full security and the safety of the workmen.

Seventh. If the lessee on abandoning any room, entry or other working place, shall leave any available coal standing which, in the opinion of a representative or official of the lessors, is not necessary to be left for the proper security of the mine workings, the said official or representative shall give the lessee notice thereof, with directions to remove the same; and if the lessee shall refuse to proceed to mine and take away said coal for the period of ten days after receiving such notice, then the lessors and lessee shall submit the question to arbitration, and each one shall appoint one arbitrator, and those two shall meet and consider said question without delay, and in case the two thus chosen cannot agree they shall appoint a third; and in case either of the parties hereto neglects to appoint an arbitrator for a period of ten days (10) after receiving notice from the other party to do so, then said other party shall nominate two and the two thus appointed shall appoint a third, and the decision and award of such arbitrators, or any of them, shall be final, conclusive and binding upon the parties hereto; and the said arbitrators, or any of them, may in their decision or award, as part thereof, decide by whom the costs of such arbitration shall be borne and paid, and the amount of such costs.

\*        \*        \*        \*        \*        \*        \*

Thirteenth. At the termination of this lease, otherwise than by forfeiture, all the improvements placed upon the demised premises by the lessee shall be valued by two disinterested appraisers, one to be chosen by each of the parties hereto, and in case of disagreement, these two to choose a third, and the three thus chosen shall value the said buildings and improvements, and

the lessors shall have the privilege of purchasing the same at such valuation within thirty (30) days after notice. And if lessors shall not within thirty (30) days accept said buildings and improvements at such valuation, the lessee shall have the privilege of removing the same from said demised premises within six months from the expiration of the said thirty days; after which said demised premises shall revert to and the possession thereof revert in the lessors.

Fourteenth. At the expiration of the herein mentioned term of thirty (30) years, for which this lease has been granted, the lessors shall have the right and privilege of purchasing the buildings and improvements of the lessee on said demised premises on an appraised valuation as provided for in Article 13. And if the lessors shall not within thirty (30) days after such valuation accept said improvements and pay for the same, said lessee shall, at his option, have the right to renew this lease for a period of fifteen (15) years under and subject to all the terms and stipulations hereinbefore mentioned and intended to be kept and performed by said lessors and lessee; and in the event lessee elect not to renew the within lease, he shall have full free and unrestricted right to remove all buildings, improvements, etc., from said leased premises within six months from the expiration of said thirty (30) days, as provided in Article 13 of this lease.

It is admitted by the taxpayer that the amount allowed by the Commissioner for exhaustion, wear and tear of property was reasonable upon the basis of its physical life.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LITTLETON: Taxpayer contends that, although in 1918, 1919, and 1920, its lease had 20, 19, and 18 years, respectively, to run, the life of its mine was only 7, 6, and 5 years, respectively. This contention is based upon its claim that, at the time the property was acquired in 1917, the estimated recoverable tonnage was 500,000 tons; that it mined an average of 60,000 tons a year and should, therefore, be allowed a deduction for each of the years for obsolescence of its mine equipment in addition to the amounts allowed by the Commissioner. In view of the lack of evidence going to establish the very basis of the taxpayer's claim, we do not find it necessary to make a decision of the question as to whether obsolescence, if any, should be measured by the life of the mine. We have no evidence of the date the property, concerning which obsolescence is claimed, was acquired, its cost, or whether its life was longer or shorter than the claimed life of the mine, or what the probable salvage value of the property would be at the end of the life of the mine. In regard to the life of the mine, it appears from the evidence that, in November, 1918, the taxpayer, in support of its claim regarding its invested capital, submitted considerable evidence to the Commissioner that

the tonnage of coal recoverable from its mining properties was 5,000,000 tons. We are not convinced from the evidence that on the date the lease was acquired by the taxpayer there were only 500,000 tons of coal which could be profitably mined.

For lack of proof of the life of the mine and of the elements necessary for the allowance of obsolescence of the mine equipment, and in view of the provisions of the lease, the determination of the Commissioner must be approved. *Appeal of Wigwam Amusement Co.*, 1 B. T. A. 335; *Appeal of Eimer & Amend*, 2 B. T. A. 603.