ESTATE OF CYRUS H. K. CURTIS, DECEASED, JOHN C. MARTIN AND MARY LOUISE CURTIS BOK, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86613. Promulgated November 17, 1937.

*Hugh Satterlee, Esq., Alfred S. Weill, Esq., Albert S. Lisenby, Esq.,* and *Philip Zimet, Esq.,* for the petitioners.

*Brooks Fullerton, Esq.,* for the respondent.

900

OPINION.

MURDOCK: Section 23 (c) of the Revenue Act of 1932 allowed the estate of a deceased person, in computing its income tax liability, to deduct estate, inheritance, legacy, and succession taxes. The Revenue Act of 1934 changed this provision and allowed no such deduction. See section 23 (c) (3) of the Revenue Act of 1934. The Revenue Act of 1934 applies "only to taxable years beginning after December 31, 1933" and does not affect taxes "for taxable years beginning prior to January 1, 1934", except as it amends prior acts. See section 1 of the Revenue Act of 1934. The estate, which is the petitioner before the Board, paid Federal estate taxes and state inheritance taxes in large amounts on May 28, 1934. If the estate was entitled to use the fiscal year basis for reporting its income, these payments were made within the first fiscal year following the death of the decedent, and the estate is entitled to a deduction of the total amount of the taxes paid. But if the estate is required to report its income on the calendar year basis, then it is not entitled to the deduction because the payment was made during a taxable year beginning after December 31, 1933, which makes applicable the Revenue Act of 1934. Thus the question for decision is, Is this taxpayer entitled to report its income on the basis of a taxable year beginning at the date of the decedent's death and ending approximately twelve months thereafter? If it is, then the calendar year 1934 was not a taxable year of this taxpayer and the Commissioner erred in determining a deficiency for that period. The Commissioner has not determined a deficiency for a fiscal year. There is no question before the Board of the petitioner's tax liability for a fiscal year and the Board has no jurisdiction to determine any such question in this proceeding. If the Board decides in the petitioner's favor, it can express its decision only by holding that there is no deficiency for the calendar year 1934.

An estate is, of course, a taxpayer under both acts. It could properly select as its first taxable year, the period beginning at the date of death of the decedent and ending on the last day of the eleventh succeeding month. In order to do that it would have to place its accounts on the basis of such a fiscal year. Both statutes provide that "the net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer." Sec. 41. Both acts also provide that the income shall be computed on the basis of a calendar year in cases where no books were kept, in cases where the taxpayer had no annual accounting period, and in cases where the taxpayer's annual accounting period was other than

a fiscal year. Sec. 41. A fiscal year is defined as an accounting period of 12 months ending on the last day of any month other than December. A taxable year means a calendar year or a fiscal year, upon the basis of which the net income is computed and includes, in the case of a return properly made for a fractional part of a year, the period for which the return was made. Sec. 48. A taxpayer may choose whether or not it will keep books, and, may further choose whether it will keep them on a calendar year basis or on a fiscal year basis. It has no choice in filing its returns, but must file in accordance with the method used in keeping its books.

The essential facts have been set forth above in findings, but a discussion of some of the evidence may be appropriate. The executors met shortly after the decedent's death and agreed unconditionally to adopt as the accounting period for the estate a fiscal year ending May 31. The record leaves no doubt about that. This action was taken upon the advice of counsel. The executors knew that they would have to pay the Federal estate tax and the state inheritance tax within one year of the decedent's death, securities of the estate would have to be sold for that purpose, the sales would probably be made at a considerable profit, and the market at that time was uncertain. They wanted as long a period as possible within which to make the sales. Counsel explained to the executors that, all things considered, and in order that the deduction for the taxes could be used to offset the profit from the sales in reporting the income of the estate, it would be desirable to select a fiscal year ending May 31, 1934. The executors and also the trustees who met with them, understood all of these considerations at the time in June 1933 when the fiscal year was agreed upon. Before December 31, 1933, the attorneys for the estate realized that there might be further justification for the period which had been selected; that is, they knew that there were proposals before Congress to eliminate the deduction for Federal estate and state inheritance taxes which, under the Revenue Act of 1932, had been allowed an estate in computing its income tax. Neither the executors nor any others connected with the estate ever had any reason to want to change the decision reached in June adopting the fiscal year basis. This was true despite fluctuations in the market value of the securities of the estate. The circumstances of the filing of the return for the period ended December 31, 1933, have been set forth in the findings. That return was presented to Martin by one unfamiliar with the decision of the executors to place the accounts upon a fiscal year basis. Just because it was placed before him, Martin thoughtlessly executed it. He did not consider whether or not it would be a proper return for the estate nor did he consider its possible effect upon the fiscal year basis. Had he been thinking of these things, he would not have filed the return, for he had no intention

to abandon the earlier decision to place the accounts of the estate upon a fiscal year basis. His coexecutor had never authorized him to file such a return. The execution and filing of the return was a mistake upon his part. In the latter part of May one of the attorneys, in going over the expenditures of the estate, discovered the check used to pay taxes on the return for the period ended December 31, 1933, and his inquiry disclosed the filing of the return for that period. All persons connected with the estate, when they heard about the filing, recognized that a mistake had been made. The Commissioner was notified to disregard it. Books of account upon the fiscal year basis were already in the process of preparation. The books were completed and closed before the end of the fiscal year. Those books were proper and adequate books and placed the accounts of the estate definitely upon a fiscal year basis. Thereafter, they were regularly kept on that basis and returns for that first fiscal year, as well as for subsequent fiscal years, were prepared and filed in accordance with those books of account.

The respondent contends that the acts of the executors up to and including March 15, 1934, were insufficient to establish a fiscal year ending May 31, 1934, as the accounting period of the estate; the executors merely expressed an intention to adopt a fiscal year; they did not adhere to or carry out that intention; they had no books of account at December 31, 1933, or on March 15, 1934, and this failure was tantamount to an adoption of the calendar basis or, at least, required the filing of a return upon a calendar year basis; the return filed for the period ended December 31, 1933, was a proper return and, thereafter, binding upon the executors; and the ruling down of the books on May 31, 1934, was not a keeping of books under a recognized method of accounting regularly employed.

The informal records kept by the secretary prior to April 24, 1934, were not regular books of account and did not establish a fiscal year basis. *H. L. Scales*, 10 B. T. A. 1024; *Max H. Stryker*, 36 B. T. A. 326. Although the executors definitely and unconditionally decided to keep their accounts upon a fiscal year basis and never thereafter considered any different basis, mere intention is not enough. *Iron Mountain Oil Co.* v. *Alexander*, 37 Fed. (2d) 231. Failure to currently record daily transactions in formal books is not necessarily inconsistent with the petitioner's contention in this case. The words "regularly employed" used in section 41 do not require that the bookkeeping method be uniform throughout every day of the taxable year. The action of these executors in waiting as long as they did to open their formal books was not unreasonable under the circumstances. The informal records which they kept from the beginning were not inconsistent with the establishment of a fiscal year basis, as is shown by the fact that regular books of account were later drawn up from those very records. The executors did adhere to and finally carry

out their original intention to place their accounts upon the fiscal year basis. This taxpayer, before the end of the fiscal year, was regularly keeping its books upon the basis of a fiscal year ended May 31, 1934, within the meaning of section 41.

The respondent cites no authority for his contention that the failure to have regular books on December 31, 1933, or on March 15, 1934, precludes a taxpayer from using a fiscal year basis. His rulings are to the contrary and require only that the books be kept upon the selected basis before the close of the first fiscal year. O. D. 404, 2 C. B. 67, published in 1920 and still in effect, is in part as follows:

A newly organized corporation may file its * * * returns on a fiscal year basis without applying to the Commissioner for permission to do so, provided such basis is definitely established and the books are kept in accordance there-with prior to the close of the first fiscal year.

The essentials mentioned in the regulations promulgated under the Revenue Acts of 1932 and 1934 are that before the close of the fiscal year the accounting period must be established and the books must be kept in accordance therewith. Regulations 77, article 324 and Regulations 86, article 41–4, provide:

No fiscal year will, however, be recognized unless before its close it was definitely established as an accounting period by the taxpayer and the books of such taxpayer were kept in accordance therewith.

The present petitioner has met the requirements of these rulings and regulations.

Taxpayers are required to make a number of elections under the revenue acts. For example, a husband and wife must elect whether they will file a joint return or separate returns; affiliated corporations must elect between a consolidated return and separate returns; and installment sellers may elect to take the benefit of reporting their profits on the installment basis. The statutes do not expressly provide that an election, once made, is binding. But the Board and the courts have held under some circumstances that once a taxpayer has made an election, he may not thereafter change to the other position. *Rose* v. *Grant*, 39 Fed. (2d) 340; certiorari dismissed, 283 U. S. 867; *Lucas* v. *St. Louis Baseball Club*, 42 Fed. (2d) 984; certiorari denied, 282 U. S. 883; *Levi Strauss Realty Co.* v. *United States*, 41 Fed. (2d) 55; certiorari denied, 282 U. S. 868; *Alameda Investment Co.* v. *McLaughlin*, 33 Fed. (2d) 120; *Commissioner* v. *Moore*, 48 Fed. (2d) 526; certiorari denied, 284 U. S. 620; *Sylvia S. Strauss*, 33 B. T. A. 855, affirmed without opinion; *Liberty Realty Corporation*, 26 B. T. A. 1119; *Radiant Glass Co.*, 16 B. T. A. 610; affd., 54 Fed. (2d) 718; *Kay Manufacturing Co.*, 18 B. T. A. 753; affd., 53 Fed. (2d) 1083. Those decisions were justified on the ground of administrative necessity, that is, that changing back and forth by taxpayers would unduly

inconvenience the Commissioner in the orderly administration of the revenue acts. There have been cases in which the original election was not held binding. See the excellent discussion in *McIntosh* v. *Wilkinson*, 36 Fed. (2d) 807. See also *Lucas* v. *Sterling Oil & Gas Co.*, 62 Fed. (2d) 951. Hobson's Choice in Federal Taxation, vol. 48, Harvard Law Review, p. 1281, is also interesting.

The present taxpayer had an election, but the election was not between two returns, calendar or fiscal year returns. The election which the petitioner had under the statute was whether its annual accounting period and its method of accounting would be upon the basis of a fiscal year or upon the basis of a calendar year. It made that election in June 1933, and never departed from it. Not only does it not seek to avoid the effect of its election, but, on the contrary, argues that it was a binding election. In accordance with its election and before the end of the fiscal year, it completed its books of account upon that basis and forever after regularly employed the same basis and method of accounting in keeping its books. The filing of a return for the period ended December 31, 1933, by a taxpayer which kept only informal records, would ordinarily indicate that it had no intention of placing its books upon a fiscal year basis and that any earlier decision to place its accounts upon a fiscal year basis had been abandoned. But in this case the filing of that return has been explained and the evidence is clear that by filing that return the taxpayer had no intention of abandoning its earlier decision to place its accounts upon a fiscal year basis. In *Great West Printing Co.* v. *Commissioner*, 60 Fed. (2d) 749, the court said:

The test is the year (fiscal or calendar) actually used in the business and shown by the books, and not the possibility of the use of some other annual period. Nor has the filing of a tax return any significance because the statute leaves no option as to that to the taxpayer if his books are kept on a particular annual basis. The taxpayer might have based his accounting period upon any annual period, closing with the end of any month, but it is upon this method actually so selected by the taxpayer that the statute automatically operates.

See also *Helvering* v. *Brooklyn City Railroad Co.*, 72 Fed. (2d) 274.

Thus the filing of the return for the period ended December 31, 1933, did not constitute an election permitted or required by the statute. That return, as later events conclusively demonstrated, was not in accordance with the method of accounting regularly employed in keeping the books of the taxpayer. The fiscal year return was in accordance with the method of accounting regularly employed in keeping the books of the taxpayer. The statute requires that the net income shall be computed upon the basis of the taxpayer's annual accounting period. In this case that period was a fiscal year ended May 31, 1934. The return filed for the short period was a mistake. It does not appear that the Commissioner was in any way incon-

venienced by that mistake, however, and there is no good reason to hold the taxpayer to a calendar year basis. There is no indication that the orderly administration of the revenue acts would be at all affected by permitting this taxpayer to wait until near the close of the first 12 months of its existence before actually preparing a formal set of books upon a fiscal year basis. The Commissioner does not contend that the method employed does not clearly reflect the income of the taxpayer. Since the books were prepared upon the fiscal year basis prior to the close of the fiscal year and within a time which seems reasonable under the circumstances, the filing of a return for the fiscal year was required under the law.

Reviewed by the Board.

*Decision will be entered for the petitioner.*