1274

S. Rossin & Sons, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Estate of Marco Fleishman, by Arthur J. Cohen and Michael Schaap, as Executors, (Transferee), Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 92942, 92943.   Promulgated December 26, 1939.

*Harry J. Leffert, Esq.*, for the petitioners.
*C. C. Holmes, Esq.*, for the respondent.

## OPINION.

OPPER: It may be conceded that the Commissioner's failure to object to the corporation's evident change of its treatment of accounts receivable was tantamount to the approval required by the statute [1] and regulations.[2]  *Ganahl Lumber Co.*, 21 B. T. A. 118.  Since, however, the Commissioner was not asked for an express approval, and did not give it, there never has been any specific ruling imposing as a condition that the existing reserve be taken up in income simultaneously.  Cf. I. T. 2348, C. B. VI–1, p. 67.  Although in 1928 the corporation purported to change its method of dealing with debts from a prospective standpoint, and substituted for periodic additions to its reserve a system of deductions for individual bad debts, it does not appear that at any time prior to the present year it changed its method of treating the then-existing reserve.  The corporation continued to have accounts receivable which might become bad, even though they did not exist in 1927.  A reserve for bad debts is not limited to accounts existing at the end of a given year.[3]  Thus, as

---

[1] Revenue Act of 1936.—

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

 *  *  *  *  *  *  *

(k) BAD DEBTS.—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; * * *

[2] Regulations 74, art. 191.  *Athol Manufacturing Co.*, 22 B. T. A.105, 110 ; aff'd., 54 Fed. (2d) 230.

[3] "While this [the reserve] method produces an equitable distribution of bad debt losses among periods, it may result in a very inaccurate statement of the net value of the accounts receivable in the balance sheet.  For instance, with yearly closings, the reserve set up at the end of one year *is expected to be adequate to absorb all losses discovered during the succeeding year.  But some of these losses may result from sales of the succeeding year* * * *."  [Emphasis added.]  1 Finney Principles of Accounting, ch. 30, p. 6.

long as the reserve was carried as an open item and not written off, as it was during all the time until the year before us, it remained theoretically possible for outstanding bad debts to be charged against that account rather than being specifically deducted.[4] That course was not precluded by any express ruling on the part of the Commissioner in this instance, although it may be a usual and justifiable practice for him to do so. See I. T. 2348, *supra*. In fact, in his treatment of the present year he has credited the taxpayer with a debit to this reserve on account of debts then outstanding which were considered to be uncollectible.

Such treatment, moreover, although perhaps unusual, is nowhere expressly prohibited. Such cases as *Arthur J. Marks*, 9 B. T. A. 1047, and *Rogers Peet Co.*, 21 B. T. A. 577, are not to the contrary. They hold merely that in a given year a taxpayer may not obtain the benefit of both methods by deducting from gross income additions to a reserve as well as charge-offs for specific bad debts. Even this result has been said to yield to the Commissioner's approval. *Manistique Lumber & Supply Co.*, 29 B. T. A. 26, 29;[5] and cf. *Arthur J. Marks, supra*. And it would certainly be anomalous to argue that the Commissioner's consent to a change of method could be implied from his failure to object to a course of action actually adopted by a taxpayer, and in the same breath that the implied consent does not include a permission to retain the existing reserve, although that is equally a part of the taxpayer's actual conduct. As we have said, we need not speculate upon the conditions which the respondent might, is some other case, have attached to an express approval. Here that was neither asked nor given.

Since the method of treatment so described was not inherently illegal or impossible, and was not forbidden by any express condition or ruling communicated by the respondent to the corporation, the petitioners' contention narrows to the position that the corporation's method of accounting was incorrect and did not properly reflect income, and that from this result the petitioners can achieve an advantage. But it is the prerogative of the Commissioner to deter-

---

[4] "METHODS OF ESTIMATING BAD DEBTS.—There are two principal methods of estimating uncollectibles at the close of the period. First, all customers' balances may be appraised, one by one, and the accounts deemed bad or very doubtful written off entirely or scaled down. The second method consists in estimating a blanket allowance based largely upon past experience. Under this method individual accounts are later charged against this allowance as their worthlessness is demonstrated. *A combination of these two methods may also be employed.*" [Emphasis added.] W. A. Paton, Accountants' Handbook, 2d Ed., p. 249.

[5] "Under the law and the authorities, petitioner had the option to adopt and use either one of these methods, but it did not have the right, without the approval of the Commissioner, to use both, according to its caprice or its interest. * * *"

mine that a taxpayer's method did not properly reflect its income, Revenue Act of 1936, section 41,[6] and this he has never done.

The result is that taking up the reserve into income in the present year was the direct consequence of the corporation's method of treatment. Until it was so treated the item was in suspense. Such an account becomes taxable income when converted from an anomalous item into an income fund, the use of which the taxpayer acquires as a result of its own act. *Charleston & Western Carolina Railway Co.* v. *Burnet*, 50 Fed. (2d) 342 (App. D. C.), affirming 17 B. T. A. 569; *G. M. Standifer Construction Corporation*, 30 B. T. A. 184; *Cream-ette Co.*, 37 B. T. A. 216, 221. Under such circumstances we see no reason why the treatment which the corporate petitioner itself elected to apply should be disregarded by us to reach a result which would permit a substantial amount of income to escape tax completely.

Reviewed by the Board.

*Decision will be entered for the respondent.*

LEECH and TYSON dissent.

---

MURDOCK, dissenting: The Commissioner advances only two arguments in support of his determination in this case. The first is that he never consented to any change and no change was ever made. The prevailing opinion properly rejects that argument, since the facts show that the petitioner changed in 1929 from the reserve method to one whereby specific debts were ascertained to be worthless and charged off, the Commissioner knew of the change and he gave his permission by approving of the returns in which specific debts were deducted.

The Commissioner recognizes that if a change was made and if permission to change is to be inferred, then the item in question was income for a prior year and the only other argument he makes is estoppel. I agree that the Board is right in rejecting that argument as a basis for its decision. The Commissioner raised that point at the hearing and has the burden of proof. He has not shown that the statute of limitations bars him from collecting the taxes due for the earlier year or that he did not know all of the facts in time to make

---

[6] Revenue Act of 1936.—

SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

assessment for that year. The retention of the reserve on the books, while specific bad debts were being charged off, not only did not mislead him but should have been a constant reminder that he was making a mistake in not including it in income for the year of the change. Thus the petitioner wins on the only two arguments advanced by the Commissioner and should receive judgment. But the prevailing opinion holds the other way on reasoning injected by the author, which reasoning is not only unsound but contrary to the practice of the Treasury and the decisions of the Board.

The Commissioner recognizes that if a change was permitted he should have applied I. T. 2348, which was designed for the express purpose of taking care of such a change. It completely and permanently disposes of the reserve by including it in income for the year of the change and requires that all subsequent deductions be by way of ascertainment of worthlessness and charge-off of specific debts. The reserve is not recognized thereafter for any tax purpose and the reserve method must be discontinued. *A. J. Marks*, 9 B. T. A. 1047; *Atlantic Bank & Trust Co.*, 10 B. T. A. 796; affd., 59 Fed. (2d) 363; *Rogers Peet Co.*, 21 B. T. A. 577; *Manistique Lumber & Supply Co.*, 29 B. T. A. 26. It is error to assume, as is done in the prevailing opinion, that the Commissioner would allow a reserve to be continued after a change from the reserve method. The contrary inference drawn from a sentence of the *Manistique Lumber* case quoted in the fifth footnote is obviously a *non sequitur*. The Commissioner does not make any such contention. If the reasoning of the opinion is correct, either the taxpayer or the Commissioner could have chosen the year in which to include this reserve in income. Cf. *Avery* v. *Commissioner*, 22 Fed. (2d) 6. Actually the petitioner never took the amount into income. See findings of fact.

The reserve should have been included in computing the income and tax of this petitioner for 1929, when the change was made and when the collection of the outstanding accounts removed the reason for the creation and retention of the reserve and made the fund available for other purposes. I. T. 2348, *supra*; *Peabody Coal Co.*, 18 B. T. A. 1081; affd., 55 Fed. (2d) 7; certiorari denied, 287 U. S. 605; *G. M. Standifer Construction Co.*, 30 B. T. A. 184; *Creamette Co.*, 37 B. T. A. 216. The reserve was not increased after April 30, 1927, and all accounts and notes receivable then on the books, to which alone the reserve could and did relate, were collected in full prior to February 1, 1929. The retention of the reserve balance on the books during and after 1929 and the failure to take it into income was erroneous accounting. The retention of the balance was meaningless for income tax purposes. "Bookkeeping entries do not make income, but neither does a failure to record an item as income permit

it to escape taxation when the time arrives that it represents income." *G. M. Standifer Construction Co., supra.* If the fiscal year ended April 30, 1929, were before us, neither party could successfully resist the effort of the other to include the item in income for that year. The Commissioner does not argue to the contrary. But the year 1929 is not before the Board and the Board may not arbitrarily correct an error of a prior year by an improper adjustment for the year in litigation. *Tide Water Oil Co.*, 29 B. T. A. 1208.

No authority is cited and I find none in decided cases, statutes, regulations or published rulings of the Treasury for including the reserve or any part of it in income for 1936. The respondent does not argue any ground save estoppel, if permission to change is found in the facts. There is reason to believe that he would not want to win this case on the reasoning advanced in the prevailing opinion. When the Commissioner approves of a change in method, whether expressly or by acceptance of a return, his approval is all inclusive and he must be presumed to have satisfied himself in regard to any necessary adjustments to make the change complete. Such is the effect of the decisions in *Home Ice Cream & Ice Co.*, 19 B. T. A. 762, and *Ganahl Lumber Co.*, 21 B. T. A. 118. Cf. *Norwich Woolen Mills Corporation*, 18 B. T. A. 303, and *Clark Brown Grain Co.*, 18 B. T. A. 937. There is no sound reason or authority for holding that a corporation effecting a change of method without receiving express permission must report the unused reserve balance as income in the year it dissolves. The decision of the Board in the *Standifer* case, *supra*, holding that unclaimed wages were income in the year of dissolution, is not such authority. It is in line with the other cases cited with it above, since there the year of dissolution was the first time when that fund was released and became available for other purposes. See also *Dallas Title & Guaranty Co.*, 40 B. T. A. 1022. Some adjustment would have been proper in the *Home Ice Cream* and *Ganahl* cases, *supra*, yet the change was permitted in each case in the absence of any adjustment. Here, likewise, it was permitted without any adjustment and no correction of the 1929 error may be made in 1936.

ARUNDELL, VAN FOSSAN, BLACK, and TURNER agree with this dissent.