FOWLER BROTHERS & COX, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101054.   Promulgated June 16, 1942.

*George E. H. Goodner, Esq.*, for the petitioner.
*Frank M. Thompson, Jr., Esq.*, for the respondent.

**OPINION.**

OPPER: The first issue is the deductibility of an assertedly worthless debt consisting of the balance of petitioner's deposit in a closed bank. Simultaneously there was owed to the bank by petitioner a note at least as large as the unpaid deposit. The record does not succeed in clarifying the facts to our satisfaction, but it does appear that from the beginning efforts had been made on petitioner's behalf to offset the one debt against the other, which if successful would, of course, be tantamount to a collection of petitioner's deposit in full. Up to and including the tax year these efforts had been unavailing. But the matter was still in abeyance, petitioner was still claiming, and the bank's receiver still denying the validity of petitioner's contention. No definitive action had as yet been taken by either party to the controversy.

In the following year petitioner dissolved and transferred assets and liabilities to a successor corporation with a similar name, and apparently similar officers and stockholders, but even at that time the matter was still in dispute. One of the points which remains in obscurity on the whole record, although the attention of petitioner's counsel was directed to it at the hearing, is the treatment of the deposit on this transfer. We do not know whether it was included among the assets turned over to the new company and if so what was paid for it, and if not when or for what consideration it was subsequently transferred. It is clear, however, that eventually it must have been obtained by the successor, for several years later the new company was successful in offsetting the deposit against the note liability which it had assumed, a result which seems to us to have been possible only on the assumption that the same entity was in a position to operate as both debtor and creditor.

Passing the point that no evidence appears upon which a determination of the financial condition of the debtor bank and of the collectibility of the deposit from the bank's assets can be independently weighed by the Board, see *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566; *Eastern New Jersey Power Co.*, 37 B. T. A. 1037, it is apparent from the record that there was no new development in the tax year respecting the ability of the bank to pay, which constituted the ground for the exercise of judgment by petitioner's officers in that year in charging off the deposit or ascertaining any impossibility of collecting it. In answer to the question, "Did conditions in general look worse in 1937 than they did in 1933?" petitioner's president testified "No, they did not * * * they looked better." What apparently induced the 1937 charge-off, if that can be told from this record, was that petitioner's president "talked to some three or four attorneys around our town there about it and they didn't think it was possible for us to ever get it offset." This, as the later events show, was erroneous advice, and in fact petitioner and its successor did not follow it; for, as we have already indicated, the claim was never abandoned and petitioner's successor was able a few years later to accomplish the settlement. If therefore the determinative factor relied upon to single out the tax year for the charge-off was the assumption founded upon advice received in that year that no offset would eventuate, the conclusion must be that there could have been no ascertainment of worthlessness at that time since in fact the debt was, and later proved to be, entirely collectible. *Mayer Tank Manufacturing Co.* v. *Commissioner* (C. C. A., 2d Cir.), 126 Fed. (2d) 588.

There is some suggestion that since the ultimate collection redounded to the benefit of petitioner's successor and since the transfer of petitioner's assets and its liquidation had intervened, the debt

proved to be worthless as far as petitioner was concerned. There are numerous objections to any reasoning of that nature. The one that we think is sufficient is that if the transfer of assets and the liquidation and dissolution which took place in a subsequent year were what deprived petitioner of the eventual payment of the debt, petitioner's loss would have to be claimed in the year when the transactions said to be responsible for it took place and not in the tax year before us.

There was no bad debt in 1937 nor in fact at any time. Petitioner's claim of worthlessness therefore can not be sustained and respondent was correct in disallowing it.

The next question is whether a deduction for officers' salaries not recorded on the books, nor claimed in petitioner's return, nor paid during the tax year, may now be allowed as a deduction. Without disposing of his other contentions, it seems to us respondent's action must be upheld on the elementary ground that petitioner was on the cash basis and can not be permitted to deduct items not paid during the tax year.

It is true that petitioner asserts it was actually upon the accrual basis but the only foundation for this assertion is that prior to petitioner's withdrawal from active business, many years before, it had conformed to that description. For five successive years, including the one before us, its returns contained a statement that they and its books were based on cash receipts and disbursements. This statement is borne out by the admitted failure to show on the books of account or the return itself any item of salaries during the tax year, a procedure which would, of course, be entirely understandable only if the cash basis were used, since if salaries were due they were not actually paid.

We sustain respondent * * * in denying the deduction * * * as salary * * * for we are not satisfied that petitioner's accounts were kept on an accrual basis so that this item was properly accruable in that year. While petitioner's chief witness testified that the accounts were so kept, that testimony is in conflict with the statement sworn to on the return that the accounts were kept on a basis of cash receipts and disbursements. This variance was not explained at trial; furthermore, the details of the return itself indicated that the statement thereon is correct. Consequently, we have relied upon it and found as a fact that petitioner's accounts were kept on the cash basis. The salary, therefore, is not deductible as an expense until paid. [*Memphis Memorial Park*, 28 B. T. A. 1037, 1044; affirmed per curiam (C. C. A., 6th Cir.), 84 Fed. (2d) 1008.]

The attempt to convert these returns into accrual basis computations on the ground that respondent's consent to a change from the prior method of reporting was never obtained, Regulations 94, art. 41-2, must likewise fail. Respondent's consent can be implied from his acceptance of a changed method of reporting, without rejection or other indication of his nonacquiescence. *Rossin & Sons, Inc.* v. *Com-*

*missioner* (C. C. A., 2d Cir.), 113 Fed. (2d) 652. The disallowance of the claimed deduction is approved.

.We are next confronted with the question whether petitioner is entitled to a dividends paid credit both for computing its undistributed surplus tax and its personal holding company tax. Petitioner distributed the sum of $10,000 in the tax year in the course of its liquidation. It is now settled that the fact that this was a distribution in liquidation rather than a dividend taxable to the stockholders does not of itself eliminate its use in computing the dividends paid credit. *Helvering* v. *Credit Alliance Corporation*, 316 U. S. 107. The provision of the Revenue Act however which authorizes this result (section 27 (f) ) is limited in application to "the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913." The function of this phrasing is discussed in *Helvering* v. *Credit Alliance Corporation, supra:*

\* \* \* The line drawn in all of the revenue acts between profits accumulated before the enactment of the first income tax act and after that date for distinguishing capital and income furnishes the reason for the insertion of the clause in subsection (f). Section 27 deals with a credit to the distributing corporation and the phrase finds its proper office in limiting the amount of the distribution in liquidation which may be considered a dividend from earnings or profits as distinguished from one composed of capital.

In the present case the distribution in question was one of a series which up to the close of the tax year had failed to complete the return of the capital account. It appears from the evidence, moreover, that when the liquidation was terminated there had still been no distribution out of petitioner's earnings or profits. Since we are dealing with distributions in partial liquidation, the provisions of 115 (c) rather than necessarily those of 115 (b) formulate the test to be applied. *Foster* v. *United States*, 303 U. S. 118. We are therefore not commanded to view these as distributions of the most recently accumulated earnings and profits, if from other circumstances we can determine whether they are properly chargeable to capital account; for, if so, section 115 (c) expressly excludes them from treatment as dividends both under 115 (c) and under 27 (f). *Reed Drug Co.*, 44 B. T. A. 573.

In this case we know that accompanying the payment to the stockholders was a cancellation and reissuance of the capital stock resulting in a reduction of the capital account on the books of the company and of the shares outstanding in the hands of the stockholders. This is the most persuasive evidence that the distributions here in question were properly chargeable to capital account. *William D. P. Jarvis*, 43 B. T. A. 439; affd. (C. C. A., 4th Cir.), 123 Fed. (2d) 742. They are not, therefore, to be treated as dividends nor as a ground for permitting a dividends paid credit under section 27 (f).

The remaining questions can be disposed of without difficulty. Petitioner's assertion of error in the computation of the specific credit permitted by section 14 (c) (1) must be rejected on the authority of *Sportwear Hosiery Mills*, 44 B. T. A. 1026. Although not expressly conceding the legal conclusion, petitioner's admissions of fact make it clear that it is a personal holding company subject to the provisions of section 351. And it explicitly withdraws any controversy relating to the penalty for failure to file a personal holding company return.

*Decision will be entered for the respondent.*