Elbridge L. Walker and Dorothy U. Walker v. Commissioner.
Walker v. Commissioner
Docket No. 51984.
United States Tax Court
T.C. Memo 1956-110; 1956 Tax Ct. Memo LEXIS 184; 15 T.C.M. (CCH) 554; T.C.M. (RIA) 56110; May 8, 1956
*184 A painting contractor expanded his business to include the retail sale of furniture, slip covers, and draperies; and he thereupon changed from the cash to the accrual method of keeping his books and reporting his income, without obtaining the prior consent of the Commissioner. Held, that there should be included in his income for the year of the change, the uncollected accounts receivable of prior years, which would otherwise entirely escape taxation. R. Colston Christian, Esq., and E. T. Bass, C.P.A., State Planters Bank Building, Richmond, Va., for the petitioners. Robert E. Johnson, Esq., for the respondent. PIERCE Memorandum *185 Findings of Fact and Opinion PIERCE, Judge: The respondent determined deficiencies in petitioners' income taxes for the years 1949 and 1950 in the respective amounts of $13.88 and $11,312.78. Petitioners have assigned no error with respect to the determination for the year 1949, and have conceded the correctness of the adjustments to income on which it is based. The sole issue for decision, which relates only to the year 1950, is: Where a painting contractor expanded his business to include a department for the retail sale of merchandise to customers, and then changed from the cash to the accrual method of keeping his accounts and filing his returns, without procuring the prior consent of the Commissioner, should there be included in his income for the year of the change, the accounts receivable which had been entered in his books at the time of the change but had not been included in income for any year? Findings of Fact Some of the facts have been stipulated. The stipulation, together with the exhibits thereto attached, is incorporated herein by reference. The petitioners are husband and wife residing in Richmond, Virginia. They filed a joint income tax return for each *186 of the years involved with the collector of internal revenue for the district of Virginia. In 1945, the petitioner Elbridge L. Walker (hereinafter called Walker) succeeded his father as sole proprietor of a business known as O. E. Walker Company, which operated as a painting and papering contractor. Thereafter, until the beginning of 1950, there was no change in the character of this business. During the period from 1945 through 1949, the accounts of the business were maintained in accordance with a predommantly cash receipts and disbursements method of accounting. There was no general ledger; and the books of account consisted of a cash receipts book and a cash disbursements book. Whenever an invoice was sent to a customer, a copy thereof was retained in the files and reflected on an index card; but no portion of the invoiced amount was entered in the cash receipts book until payment actually was received. Correspondingly, in the case of invoices received from creditors, the amounts thereof would not be entered in the cash disbursements book until payment had actually been made by cash or check. Also, various other operating expenses, such as labor, rent, clerical help, heat, *187 and advertising, were entered in the cash disbursements book only when paid. At the end of each year, a physical inventory would be taken on printed forms, of the unused paint, brushes, and other miscellaneous supplies and equipment, which were used in performing the contracts. The amounts of these inventories at the end of the years 1947, 1948 and 1949, were $1,915, $2,150, and $2,800, respectively. The income tax return of Walker and his wife for the year 1949, which was filed on a predominantly cash receipts and disbursements basis, reported "Gross Receipts" from the business in the net amount of $187,014.96; "Cost of Sales," $151,991.43; miscellaneous other expenses, $25,738.97; and net profit, $9,284.56. Said "Gross Receipts" represented only amounts which had actually been received in cash; and did not include any uncollected accounts receivable. The "Cost of Sales" was set up in the form of an inventory; but the opening and closing entries included only the unused paint, brushes and miscellaneous other material which made up the above-mentioned physical inventory, while most of the other items were current expenses incurred in performing the contracts, viz: Cost of Sales: Inventory - January 1, 1949
$ 2,150.00
Material purchases
36,999.80
Subcontract work
6,735.69
Labor
100,714.34
Traveling costs - out-of-town
jobs
2,009.21
Brushes, drop cloths, equipment,
repairs, etc.
$ 2,695.87
Laundry - drop cloths
158.80
Auto and truck expense
3,327.72
$154,791.43
Less: Inventory - December 31,
1949
2,800.00
$151,991.43
*188 Early in 1950, Walker established a separate retail department for his business, through which he sold furniture, slip covers, and draperies to customers. At about the same time, he arranged with a firm of certified public accountants to set up a complete doubleentry books of account, and added, for the first time, a general ledger, a general journal, and a sales journal. The opening entries for the year 1950 were as follows: Description
Debit
Credit
Petty cash
$ 209.50
Cash in bank
6,004.08
Accounts Receivable - Trade
23,202.10
Due from Employees
77.02
Inventory
2,800.00
Autos and Trucks
7,845.43
Reserve for Depreciation
$ 2,848.55
Furniture & Fixtures
2,041.65
Reserve for Depreciation
412.48
Leasehold Improvements
865.40
U.S. Income Tax Withheld
2,055.40
U.S. Social Security Tax Withheld
341.48
E. L. Walker, Capital
37,387.27
$43,045.18
$43,045.18
On petitioners' income tax return for the year 1950, Walker reported "Total Gross Income" from the business of $344,106.68, and "Net Profits Per Books" of $32,168.38. Said "Total Gross Income" included the sales which had accrued during the year 1950; but it did not include *189 any of the accounts receivable which had been entered on the books as of the beginning of the year, which had for the most part been collected during the year, and which had not been included in income for any year. The "Cost of Sales" and the "Expenses" reported on such return included not only expenses actually incurred in 1950, but also certain other expenses in the amount of $5,445.64, which had been incurred in prior years but had not been paid until 1950. Also, there was included in the bad debt deduction claimed on such return, the amount of $2,813.47 which represented the uncollectible portion of those accounts receivable which had been entered on the books at the beginning of the year but had not been taken into income. The opening inventory used in computing the "Cost of Sales" shown on this 1950 return was in the amount of $2,800, and consisted entirely of the above-mentioned unused paint, brushes, and miscellaneous supplies. However, the closing inventory was in the amount of $10,398.89; of which approximately $7,000 consisted of the furniture, slip covers, and draperies held for sale in the new retail department of the business, and only about $3,400 consisted of the *190 unused paint, brushes and miscellaneous supplies. Both the books of account for 1950, and the income tax return filed for that year, were kept and prepared in accordance with a predominantly accrual method of accounting. Petitioners did not, prior to the filing of their 1950 return, request or obtain the consent of the Commissioner to change their method of accounting. The respondent, upon his audit of the 1950 return, included in income those accounts receivable in the amount of $23,202.10, which had been entered on the books at the beginning of the year but had not previously been included in income. He made no other change in any of the business accounts as reported. Opinion The issue presented is the correctness of respondent's action in including in Walker's income for 1950 the uncollected accounts receivable which were entered on his books at the beginning of the year, but which had not been included in income for any year. Walker's position is that, when he used the accrual method for 1950 in keeping his accounts, he really did not change his previous method of accounting, because in the prior years his uncollected accounts receivable were in his files and available *191 for use in applying the accrual method, and also because he had the inventory of unused paint, brushes, and miscellaneous supplies that were used in his contracting business. He contends that his income of the prior years should, therefore, have been computed in accordance with the accrual method, even though it was not so reported. He further contends that respondent's action in adding the uncollected accounts receivable to his 1950 income is an attempt to tax prior year accruals in the current year; and that this may not properly be done, even though failure to make the adjustment would result in a substantial amount of income escaping tax entirely. We regard such position to be unsound. There can be no reasonable doubt that, for all years prior to 1950, the method of accounting used in keeping the books of the business and in computing the income was predominantly that of cash receipts and disbursements. This is shown not only by the fact that the only books of account for such years were a cash receipts book and a cash disbursements book, but also by the facts that all sums derived from the contracting activities, which made up the bulk of the income, were entered only when payment *192 was actually received, and that all disbursements in connection with such contracting were entered only when actually paid. It is not sufficient to argue that use of the accrual method might have been more advantageous, or that data was available to which this method might have been applied; for Walker did not elect to use such method. Also, the mere existence of the physical inventory did not place the accounts automatically on the accrual basis. Prior to 1950, this inventory was not primarily an inventory of merchandise held for sale to customers, or of goods in process of manufacture, or even of uncompleted work in process; but rather, it consisted partly of unused paint, and partly of brushes, tarpaulins and other equipment which were in the nature of "tools" used in performing the contracts. The closing amounts of this inventory, from year to year during the period 1947 through 1949, were relatively small and remained fairly constant; and the difference between the opening and closing amounts for 1949 was only $650. Moreover, the largest item of the inventory, as shown on the 1949 return, was "Labor - $100,714.34," which related to the contracts performed and not to the cost *193 of goods on hand at the end of the year. And most of the other items were current expenses of the year, such as laundry and trucking, or materials purchased and consumed within the year. Thus, the use of such an inventory did not effect any substantial distortion of income. And the existence of an inventory of such character is not, in itself, sufficient to convert to the accrual method of accounting, the predominantly cash method which Walker chose to use. Cf. Glenn v. Kentucky Color & Chemical Co., Inc., (C.A. 6) 186 Fed. (2d) 975; Theodore H. Beckman, 8 B.T.A. 830. In 1950, Walker made material changes, not only in the character of his business, but also in the method of accounting used in keeping his books and reporting his income. In that year, he established a new department for the business, in which he carried for the first time, an inventory of draperies, furniture, and slip covers for sale to customers in the ordinary course of business. Such inventory was different, both in character and amount, from his prior inventory of unused paint, brushes and miscellaneous supplies. Also in that year, he, with the assistance of the same certified public *194 accountants who prepared his 1949 and 1950 returns, set up for the first time a general ledger, a general journal, and a sales journal, in which both receipts and expenses were entered at the time of accrual. Likewise in that year, he for the first time computed the income on his return in accordance with a predominantly accrual method. All these changes were made without direction of the Commissioner and without obtaining prior permission from him. Section 42 of the Internal Revenue Code (1939) provides in part, that: "The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period." Also, the applicable regulation (Regs. 111, section 29.41-2) provides that "a taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner"; and that "permission to make the change will not be granted unless the taxpayer and the Commissioner agree to the terms *195 and conditions under which the change will be effected." The provisions of this regulation are reasonable; and their purpose is to prevent, in a change of accounting methods, either a duplication of deductions or an omission of income. Here, Walker acted without obtaining prior consent of the Commissioner. Although the latter's subsequent consent may be implied from acceptance of the changed method of reporting (William H. Goodrich, 25 T.C. - (March 15, 1956); Fowler Brothers & Cox, Inc., 47 B.T.A. 103, 109, affirmed 138 Fed. (2d) 774, this does not relieve Walker from accepting the adjustment which the Commissioner found necessary to "pick up the slack" occasioned by the change of method, and thereby prevent the omission of a substantial amount of income. In the absence of such adjustment, which is neither unique nor unusual, $23,202.10 of accounts receivable would entirely escape taxation. The cases upon which Walker principally relies - David W. Hughes, 22 T.C. 1; Clement A. Bauman, 22 T.C. 7; Caldwell v. Commissioner, 202 Fed. (2d) 112, affirming a Memorandum Opinion of this Court [10 TCM 611,]; *196 Commissioner v. Dwyer, 203 Fed. (2d) 522, affirming a Memorandum Opinion of this Court; Welp v. United States, 201 Fed. (2d) 128; and Commissioner v. Mnookin's Estate, 184 Fed. (2d) 89, affirming 12 T.C. 744 - are distinguishable on their facts. In none of these cases was there an alteration in the character of the business which required a change of accounting methods, and in none was the change of methods made by the taxpayer himself, without prior consent of the Commissioner. Also, in none was there a setting up of new books of account on the accrual basis, or a shift to the accrual method in reporting income on the returns. We approve the determinations of the respondent for each of the years here involved. Decision will be entered for the respondent.