William T. LORD and Yvetta Lord, Appellants,

v.

UNITED STATES of America, Appellee.

George A. LORD and Cora M. Lord, Appellants,

v.

UNITED STATES of America, Appellee.

Richard H. LORD and Elizabeth C. Lord, Appellants,

v.

UNITED STATES of America, Appellee.

P. S. LORD and Muriel T. Lord, Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 17115–17118.

United States Court of Appeals Ninth Circuit.

Nov. 15, 1961.

Rehearing Denied Jan. 24, 1962.

Hampson & Weiss, by Robert L. Weiss, Alfred A. Hampson and John C. McLean, Portland, Ore., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Washington, D. C., and Thomas H. McPeters, Alexandria, Va., Attys., Dept. of Justice, Sidney I. Lezak, Acting U. S. Atty., and Edward J. Georgeff, Asst. U. S. Atty., Portland, Ore., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and BEEKS, District Judge.

BEEKS, District Judge.

This is a suit for tax refund by appellants, members of a partnership called P. S. Lord Associates (herein referred to as Associates), which in 1950 and 1951 had two long term subcontracts for mechanical engineering work in Alaska. The partners claim that due to errors in determining the percentage to which each contract was complete at the end of fiscal 1950, the partnership income was overstated and thus each member's income was overstated. In 1952, after both contracts had been completed, appellants filed amended tax returns for 1950 alleging

the foregoing facts. The Government refused the refund and this action followed.[1] The lower court found for appellee (herein called the Government) from which this appeal is taken. Appellants have specified error in that (a) the District Court found the 1950 return clearly reflected income, (b) it adjudged the tax legally assessed and collected, and (c) the court having concluded that appellants' amended return for 1950 clearly reflected income, did not enter judgment as prayed for by appellants.

In reporting income for the fiscal year ending November 30, 1950, Associates used the percentage of completion method authorized by Treasury Regulation 111 (1939 Code) Sec. 26.42–4(a) [2] and the percentage of completion reported therein was based upon the required engineer's certificate which accompanied the return. The percentage of completion recited in the certificate was measured by engineering estimates of physical progress determined primarily from visual inspection of the work in progress.

The amended return filed by appellants for fiscal 1950 likewise followed the percentage of completion method but the percentage of completion used therein was predicated on the ratio that the costs incurred bore to the total cost and no engineer's certificate accompanied the amended return.

Accordingly, it appears that while appellants prepared both returns on the percentage of completion method, different procedures were used in arriving at the percentage figure.

Both methods employed by appellants in determining percentage of completion clearly reflect income when properly applied, and, when so applied, are equally acceptable to the Commissioner.[3]

The conflict in this case revolves around the question of whether a taxpayer who uses the percentage of completion method of computing net income on long term contracts may, after computing the percentage of completion by one method, later change such percentage by use of a different method to show that less income was actually earned.

Appellants' major contention [4] is that due to errors in computing the percentage

---

1. The facts in this case, which are undisputed, as well as the statutes and Treasury Regulations involved, appear fully in the opinion of the District Court, Lord et al. v. United States, 184 F.Supp. 149, and in the interest of brevity will not be repeated here.

2. "Gross income derived from such (long term) contracts may be reported upon the basis of percentage of completion. In such case there should accompany the return certificates of architects or engineers showing the percentage of completion during the taxable year of the entire work to be performed under the contract. There should be deducted from such gross income all expenditures made during the taxable year on account of the contract, account being taken of the material and supplies on hand at the beginning and end of the taxable period for use in connection with the work under the contract but not yet so applied."

3. The District Court found and counsel for the Government conceded during argument that either visual estimates or cost ratio computation of the percentage figure may be used by a taxpayer under the per-

centage of completion method. Treasury Regulation 29.41–1 states the "fundamental rule" to be that " * * * the computation shall be made in such a manner as clearly reflects the taxpayer's income." Thus it appears that any recognized procedure that meets this test will be acceptable.

4. More fully stated, appellants contend that the Regulations prescribe a formula which encompasses percentage of completion accounting. The formula is as follows: Percentage complete times contract price equals gross income; gross income minus costs to date equals net income. The argument is that amendment of one element in the formula, i. e. percentage complete, is not a change of accounting method prohibited by the Regulation. Because the prohibition is only against changing accounting methods, appellants thus contend that their action was entirely proper as merely a new computation under the original method. Further, and in support of their claim, appellants call attention to the fact that "upset" prices were used in determining the percentage of completion. The nub of this contention

of completion for fiscal 1950, their reported income was too large and they argue that the amended return merely constituted an adjustment within the percentage of completion method prescribed by the regulations.

We are unable to agree with such contention. The method used by Associates to prepare the original return for fiscal 1950 is an approved method and clearly reflects income. It is our view that appellants are bound by their election to report income in accordance with such method and may not retroactively change to another method to correct errors in the original return without securing the Commissioner's consent. An amended return purporting to correct errors in the original return must be calculated in accordance with the method initially used to compute income. The fallacy involved in appellants' contention is that such a procedure would allow a taxpayer to wait until the termination of a long term contract and then evaluate the method which would be most favorable to him over the long term. He could affirm the method originally employed or change to another method of computing the percentage of completion depending upon which would be to his financial advantage over the term of the contract. Such a course of conduct is repugnant to our system of taxation.

If Associates, or anyone, were allowed to report income in one manner and then freely change to some other manner, the resulting confusion would be exactly that which was to be alleviated by requiring permission to change accounting methods. An appropriate statement of the reasons for requiring such permission is found in Pacific National Co. v. Welch, 304 U.S. 191, 58 S.Ct. 857, 858, 82 L.Ed. 1282 (1938):

> "Change from one method to the other, as petitioner seeks, would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws. It would operate to enlarge the statutory period for filing returns (sec. 53(a)) to include the period allowed for recovering overpayments (sec. 322(b)). There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his tax liability computed and settled according to the other method."

Unquestionably, the law allows correction of a return when it can be shown that the return does not clearly reflect income. Also, it is obvious here that Associates could not correct visual estimates after the job was complete. However, the onus ought properly to be on the taxpayer to make sure that the method of estimating percentage of completion is used correctly as the job progresses. Pacific National Co. v. Welch, supra, provides a further appropriate comment:

> "While petitioner's return may have been an inept application of the deferred payment method, there is nothing in it or the statement of claim for refund that gives any support to the idea that, if rightly ap-

is that Associates, to defray added risk due to the work being a new venture in a cold climate, exaggerated the prices charged on some individual jobs in the bid breakdown. The percentage of completion was applied to each job in the bid breakdown (a schedule of charges to be made for each item within the contract) for the purpose of determining progress payments to be made by the Government-owner. The progress payments were computed from a formula in the contract. (The formula can be found in the District Court's opinion.) Thus appellants say, in effect, that they overcharged the owner and that this inflated their income for which they are entitled to a refund. An example of the upset as used in appellants' brief showed one item (coal handling equipment) that was estimated to be $61,805 (Associates' cost-plus profit) but was "upset" and included in the bid breakdown at approximately $190,-000. Consequently, appellants argue, the billings did not reflect the true progress of the work or the correct percentage of completion.

·plied, that method would not clearly reflect income."

Appellants having misapplied an acceptable method of calculating the 1950 return are nonetheless bound thereby. Consequently, the judgment of the District Court is affirmed.