RONNIE L. BARBER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8890-73.     Filed May 29, 1975.

*James Arogeti,* for the petitioner.
*Dudley W. Taylor,* for the respondent.

OPINION

STERRETT, *Judge:* The respondent determined a deficiency of $4,152 in the petitioner's Federal income tax for the calendar year 1971. Certain issues not having been raised in the petition, the sole issue presented requires our determination of the amount of income petitioner must report in 1971 as a result of his being a stockholder of Sure Quality Framing Contractors, Inc., an electing small business corporation.[1] Resolution of this issue

---

[9] Respondent has raised no issue as to deductibility based on sec. 2056(b)(2).

[1] Because it was not distributed, any such income would increase petitioner's basis in his Sure Quality Framing Contractors, Inc., stock. Consequently, in his answer, respondent raised as an alternative issue, depending upon our decision as to the amount of income from said corporation which petitioner must report in 1971, the amount of gain he realized on the redemption in 1971 of his stock in said corporation. Petitioner has not contested this alternative issue and hence our decision in this case will reflect any resulting change in petitioner's basis in his Sure Quality Framing Contractors, Inc., stock from that determined in the notice of deficiency.

ultimately, and solely, depends upon whether the respondent has the authority to permit Sure Quality Framing Contractors, Inc., to change from one method of accounting, adopted on its original return for its 1971 fiscal year (ended April 30, 1971), to another method through the filing of an amended return for that year on June 4, 1972.

All of the facts have been stipulated or deemed admitted and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

At the time of filing the petitioner herein, petitioner maintained his legal residence in Atlanta, Ga. He filed his Federal income tax return for the calendar year 1971 with the Southeast Service Center at Chamblee, Ga.

Sure Quality Framing Contractors, Inc. (hereinafter Contractors), was incorporated on April 29, 1970, as the continuation of a business formerly carried on by a general partnership. Contractors is in the construction business and primarily contracts to do framing work on various types of buildings.

Contractors adopted a taxable year ending April 30 and it timely elected, beginning with its first taxable year, to be taxed as a small business corporation under subchapter S of the Internal Revenue Code of 1954.[2]

On January 1, 1971, petitioner owned 250 of the 1,750 outstanding shares of stock of Contractors. Petitioner was a stockholder in Contractors on the last day of its taxable year ended April 30, 1971. In August 1971, petitioner terminated his association with Contractors when it redeemed all of his stock.

On September 9, 1971, Contractors filed its tax return for its taxable year ended April 30, 1971, employing the completed-contract method of accounting and reporting a loss of $76,239.09 (the reported loss exclusive of reported capital gains was $77,229.74). On June 14, 1972, Contractors filed an amended return for its taxable year ended April 30, 1971, in which it utilized the percentage-of-completion method of accounting (in addition to several other changes) and reported taxable income of $15,865.53.

The changes reflected in Contractors' amended return for its taxable year ended April 30, 1971, were accepted by respondent

---

[2] All Code references are to the Internal Revenue Code of 1954, as amended and as applicable to the taxable year involved.

after audit, except that Contractors was not allowed to defer the inclusion of gross receipts and the deduction for cost of goods sold on projects less than 15 percent completed as of the end of the taxable year. Because of this above-mentioned adjustment, respondent determined that Contractors' taxable income for its taxable year ended April 30, 1971, was $38,759.10 rather than the $15,865.53 reported on the amended return.

On his 1971 Federal income tax return, petitioner reported a loss of $11,033 as his share of Contractors' loss for its taxable year ended April 30, 1971. In his notice of deficiency, respondent determined that, pursuant to Contractors' amended return and the above-mentioned adjustment made thereto by respondent, petitioner's share of Contractors' ordinary taxable income for its taxable year 1971 was $5,537.02 [3] ($\frac{1}{7}$ of $38,759.10) and that consequently petitioner's taxable income was understated by $16,570.02 (the $11,033 claimed loss plus $5,537.02). In the notice of deficiency, respondent stated his determination that the percentage-of-completion method of accounting more clearly reflected Contractors' income than did the completed-contract method.

The sole issue for consideration is the determination of the amount of income petitioner must report in 1971 as a result of his being a stockholder of Contractors, an electing small business corporation. The resolution of this issue requires our determination of the correct amount of taxable income of Contractors for its taxable year ended April 30, 1971, which in turn depends solely upon our decision with respect to the question of whether that corporation must employ the percentage-of-completion or the completed-contract method of accounting. To decide this question, we need only determine whether the respondent has the authority to permit Contractors retroactively to change its method of accounting.

Contractors adopted the completed-contract accounting method on its original return for its taxable year ended April 30, 1971 (its first taxable year of existence). Then, in an amended return for said year filed on June 30, 1972, it reported its income for its 1971 taxable year on the basis of the percentage-of-

---

[3] In his petition, petitioner states that Contractors' "amended return resulted in tax-payer having $4,236.25 in additional income" from Contractors. Petitioner has not explained, and we are at a loss on the point, his reasoning for the $4,236.25 figure and we consequently do not consider whether such amount is his share of Contractor's income.

completion method. After audit and an adjustment to Contractors' income not herein relevant, the respondent allowed the change in accounting method because it was his opinion that the percentage-of-completion method more clearly reflected income.

Before turning to the issue at hand, we note initially that this is not a case where respondent has expressly or impliedly exercised his power under section 446(b) [4] to require Contractors to report its income on the percentage-of-completion method of accounting. Respondent only determined that the percentage-of-completion method more clearly reflected income than did the completed-contract method.[5] Such a determination is not a proper basis upon which the respondent may invoke his section 446(b) power. *Auburn Packing Co.*, 60 T.C. 794, 798-800 (1973); *W. P. Garth*, 56 T.C. 610, 623 (1971). We note also that this is not a case where a timely (i.e., filed by due date of the first return) amended return for Contractors' first taxable year was filed, which return might then be treated as part of the original return and might unilaterally change the accounting method first elected. Cf. *Haggar Co. v. Helvering*, 308 U.S. 389 (1940); *Ira Goldring*, 20 T.C. 79, 82 (1953).

It is petitioner's position that respondent did not have the authority to allow Contractors to change retroactively its election of a permissible accounting method for the year of election after expiration of time within which a return was to be filed. Petitioner bases his argument upon the fact that there is no Code provision specifically granting the respondent such power and upon the purpose behind the doctrine of election. Petitioner also relies upon certain language in *Pacific National Co. v. Welch*, 304 U.S. 191 (1938), which he asserts lays down the principle that once an election of a permissible accounting method has been made that election is binding upon the taxpayer and the Commissioner.[6]

---

[4] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

[5] Either of the above accounting methods is permissible provided it clearly reflects income. Sec. 1.446-1(c)(1)(iii) and sec. 1.451-3(b), Income Tax Regs.

[6] Petitioner has not argued that respondent should be bound by the procedure in his own regulations that, in order to obtain consent for a change of accounting method for a particular taxable year, the taxpayer must file an application within 180 days after the

Respondent, on the other hand, contends that he has the authority to permit a retroactive change in accounting method and that his decision in such matters will not be overturned unless an abuse of discretion is shown. Under the facts of this case we agree with respondent.

We have not been directed by petitioner to any case which holds on facts similar to those here that the respondent does not have the power to allow a retroactive change in accounting method.[7] Nor in our own research have we located any case with a holding directly on point. This stems no doubt from the fact that the parties' usual roles in this area are somewhat reversed. However, the overwhelming weight of cases found by us either state or strongly imply that, where the respondent is not prohibited by statute, he may in his discretion either accept or reject a request for a retroactive change in choice between two permissible accounting methods. See, e.g., *United States v. Catto*, 384 U.S. 102 (1966); *Bookwalter v. Mayer*, 345 F. 2d 476, 480 (8th Cir. 1965); *Lord v. United States*, 296 F. 2d 333, 335 (9th Cir. 1961); *Commissioner v. O. Liquidating Corp.*, 292 F. 2d 225, 231 (3d Cir. 1961), cert. denied 368 U.S. 898 (1961); *Transamerica Ins. Co. v. Womack, Inc.*, an unreported case (E.D. Va. 1972, 31 AFTR 2d 73-471, 73-1 USTC par. 9146), affd. per curiam 492 F. 2d 1240 (4th Cir. 1974).

We think it significant that in our research of the question at hand we have found that, in discussing other cases involving a taxpayer's attempt retroactively to change an accounting method through an amended return or on a claim for refund, the courts generally speak in terms of the respondent's not improperly refusing to permit the requested change rather than his being powerless to allow such changes. In fact, in several cases respondent has been held to have given what in effect is retroactive implied consent to a change in accounting method. See *Fowler Bros. & Cox v. Commissioner*, 138 F. 2d 774, 775-776 (6th Cir. 1943), affg. 47 B.T.A. 103 (1942); *S. Rossin & Sons v. Commissioner*, 113 F. 2d 652, 653-654 (2d Cir. 1940), revg. on another point 40 B.T.A. 1274 (1939); *Geometric Stamping Co.*,

beginning of that taxable year. Sec. 1.446-1(e)(3)(i), Income Tax Regs.

[7] We do not understand the Court's inference in *Pacific National Co. v. Welch*, 304 U.S. 191, 194-195 (1938), to be to situations where the change is the result of bilateral agreement by the taxpayer and the respondent and where, as we believe is the case here, such action is not prohibited by the Code.

26 T.C. 301, 304-305 (1956); *Ganahl Lumber Co.*, 21 B.T.A. 118 (1930). Cf. *Daniels Jewelers, Inc. v. United States*, 279 F. 2d 226, 229 (Ct. Cl. 1960).

We agree with petitioner that neither section 446(e)[8] nor any other Code provision expressly gives the respondent specific authority to allow retroactive changes in accounting methods. However, neither does section 446 nor any other Code provision specifically prohibit the respondent from permitting a retroactive change. Cf. *Scaife Co. v. Commissioner*, 314 U.S. 459, 461-462 (1941); *Riley Co. v. Commissioner*, 311 U.S. 55, 58 (1940); *William B. Scaife & Sons Co. v. Driscoll*, 94 F. 2d 664, 666 (3d Cir. 1937), cert. denied 305 U.S. 603 (1938). A finding here of the power in respondent to grant retroactive changes in accounting methods, we think, is in line with the acknowledged "broad discretion" of respondent in determining whether to permit or forbid a change in accounting methods. *Brown v. Helvering*, 291 U.S. 193, 204 (1934). We think the logical inference to be drawn from a reading of section 446(e) permits the respondent to allow both retroactive and prospective changes in accounting methods. We have found nothing in the regulations upon which section 446(e) was based to convince us otherwise.[9] It is clear that, where it is not prevented by law, two parties to a contract can change it. We perceive no reason why the axiom should not apply in this instance.

Moreover we are of the opinion that the purpose behind the doctrine of election will not be defeated if we find that a taxpayer and the respondent may bilaterally make a retroactive change in accounting methods where the new method clearly reflects income.

Several explanations have been advanced for the principle that elections are generally considered binding. These are: (1) To protect against the loss of revenues, *Camiel Thorrez*, 31 T.C. 655, 668 (1958), affd. per curiam 272 F. 2d 945 (6th Cir. 1959); (2)

---

[8] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(e) REQUIREMENT RESPECTIVE CHANGE OF ACCOUNTING METHOD.—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.

[9] Sec. 446(e) was first enacted in the 1954 Code. It merely codified existing regulations, S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. 300 (1954), which are in substance the same as the present regulations under sec. 446(e). See, e.g., sec. 39.41-2(c), Regs. 118; sec. 29.41-2, Regs. 111.

to prevent administrative burdens and inconvenience in administering the tax laws, *Estate of Cyrus H. K. Curtis,* 36 B.T.A. 899, 906-907 (1937); and (3) to promote consistent accounting practice thereby securing uniformity in collection of the revenue, *Pacific Vegetable Oil Corp.,* 26 T.C. 1, 16 (1956), revd. on another issue 251 F. 2d 682 (9th Cir. 1957). Clearly these purposes can be satisfied in cases such as this where there is bilateral agreement by the exercise of discretion on respondent's part.

*Decision will be entered for the respondent.*