## APPEAL OF KUNKEL & CO., INC.

Docket No. 3519.    Submitted June 25, 1925.    Decided November 24, 1925.

> 1. The acceptance or rejection of amended returns, submitted to the Commissioner by taxpayers, is a matter of internal administration in the Bureau of Internal Revenue and it is not within the province of this Board to decide questions of policy in that bureau. *Appeal of Cleveland Home Brewing Co.*, 1 B. T. A. 87, 91.
>
> 2. Lessee holding option of renewal of his lease, and making permanent improvements on the leased premises, is entitled to exhaust the cost thereof over the remaining term of his lease plus the renewal term thereof, unless the life of the addition is less than such period.
>
> 3. Where invested capital can be determined, and abnormalities mentioned in section 327 do not exist, the tax liability should be computed under the provisions of section 301 of the Revenue Acts of 1918 and 1921, provided the tax thus computed does not exceed the maximum limitations prescribed by section 302.

*Meyer Kurz, Esq.*, for the taxpayer.
*Blount Ralls, Esq.*, for the Commissioner.

### Before KORNER.

This is an appeal from the determination of a deficiency in income and profits taxes for the years 1919 to 1921, inclusive, in the amount of $1,735.81.

FINDINGS OF FACT:

1. Taxpayer is a New York corporation with its principal office at Brooklyn. It was organized in or about the month of May, 1910, with an authorized common capital stock of $10,000, all of which was issued for cash at par. It is engaged in the automobile repair and painting business.

2. The books of account of the corporation consisted solely of cash and check books. All receipts were deposited in the bank, and all disbursements were made by check, other than petty cash. Records were also kept of accounts receivable and accounts payable, but they were memorandum records merely, and no postings to ledgers were made. The accounts were maintained on a cash receipts and disbursements basis.

3. For the years 1919, 1920, and 1921, the taxpayer filed income-tax returns which purported to be on the cash receipts and disbursements basis. Estimated inventories of supplies were used in ascertaining the net income. These returns were prepared by an accountant employed by the taxpayer for that purpose.

4. In 1922 an accountant was employed by the taxpayer to install a double entry system of accounts. In the course of this work it was discovered that the receipts and disbursements reported in the original returns for 1919 to 1921, inclusive, were not in accordance with the cash records. After an exhaustive analysis of the cash records, amended returns for the years under consideration were prepared and submitted to the Commissioner purporting to show the true net income, which, in each instance, was less than that reported in the original returns. These amended returns were rejected by the Commissioner, who proceeded to determine the tax liability of the taxpayer upon the returns originally filed.

5. On January 7, 1919, taxpayer entered into possession of the premises where its business is carried on, under a lease, bearing even date, for a period of 10 years at a stipulated annual rental, with an option for renewal for a further term of 10 years. During the years under consideration taxpayer made certain permanent improvements to the leased premises in the way of installation of electric lights, a steam heating plant, plumbing, smokestack, concrete floors, etc. The cost of these improvements to the taxpayer, according to the years in which incurred, was as follows:

| 1919 | 1920 | 1921 |
|------|------|------|
| $8, 603. 65 | $242. 90 | $1, 292. 60 |

6. During the years 1919, 1920, and 1921, taxpayer expended the sums of $89.50, $226.55, and $156.00, respectively, for the acquisition of machinery and tools. During the same years the sums of $165.00, $93.00, and $550.30, respectively, were expended for office furniture

and fixtures. The average useful life of the machinery, tools, and furniture and fixtures so acquired is 10 years.

7. In 1918, taxpayer acquired 4 second-hand automobiles at a total cost of $2,350. These were used solely in the conduct of taxpayer's business throughout the three years under consideration. The useful life of these automobiles at the date of acquisition was 4 years.

8. In its original returns for the years 1919 and 1921, taxpayer claimed deductions for depreciation in the amounts of $655 and $870, respectively. No depreciation deduction was claimed in the return for the year 1920. The claimed deductions were merely arbitrary amounts and were disallowed by the Commissioner.

9. During 1919, 1920, and 1921, Joseph Kunkel was president of the corporation, and he personally devoted all his time to the business. In addition to the duties performed by him in his executive capacity, he personally supervised all work done in taxpayer's shop, made all estimates on contract work, and kept such accounting records as were maintained by the taxpayer. J. E. Brennan was secretary and treasurer and devoted his entire time to the business. These two individuals were the only executive officers employed by the taxpayer.

10. The affairs of the taxpayer were informally conducted. No formal meetings of stockholders or directors were held. Matters requiring the attention of the stockholders and directors were informally discussed and disposed of. No minutes of informal discussions were recorded.

11. At the informal discussions of the officers and directors certain weekly drawing accounts were agreed upon to be drawn by the two executive officers as compensation for services rendered. These amounts were to be drawn weekly, as the condition of the taxpayer's treasury permitted.

12. In its returns for the years under consideration taxpayer claimed deductions on account of salaries paid to officers in the following amounts:

| | |
|---|---|
| 1919 | $1,785.00 |
| 1920 | 3,763.30 |
| 1921 | 6,060.00 |

In the amended returns which the taxpayer submitted to the Commissioner, but which the latter rejected, taxpayer claimed deductions on account of salaries paid to officers in the following amounts:

| | |
|---|---|
| 1919 | $8,124.83 |
| 1920 | 6,259.07 |
| 1921 | 6,672.06 |

The Commissioner has allowed the deductions claimed in the original returns and nothing more.

13. As heretofore pointed out, the entire authorized capital stock of the taxpayer of a par value of $10,000 was issued for cash at par. None of the stock has been repurchased or retired. By stipulation of counsel it was agreed that the Board, for the purpose of determining the invested capital, might find that the net income reported on the income-tax returns for the years 1910 to 1918, inclusive, represented the correct earnings of the taxpayer for those years. The Board accordingly finds that the net income of the taxpayer for the years 1910 to 1918, inclusive, was as follows:

| | |
|---|---:|
| 1910 | $535. 00 |
| 1911 | 895. 87 |
| 1912 | 1, 195. 12 |
| 1913 | 1, 216. 11 |
| 1914 | 1, 468. 00 |
| 1915 | 2, 368. 44 |
| 1916 | 1, 061. 62 |
| 1917 | 1, 445. 18 |
| 1918 | 1, 968. 77 |

Total net earnings to Dec. 31, 1918 _____ 12. 154. 11

14. During its corporate existence the taxpayer has paid but two dividends, one of 6 per cent, amounting to $600, in 1915, and another of 10 per cent, amounting to $1,000, in 1921. There were no other distributions of any character by the taxpayer prior to and during the years under consideration.

15. The Commissioner was unable satisfactorily to determine the taxpayer's invested capital for each of the years under consideration and determined the taxpayer's profits-tax liability for those years to be the maximum limitation under the provisions of section 302 of the Revenue Acts of 1918 and 1921.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be made on 10 days' notice, in accordance with Rule 50.

#### OPINION.

Korner, *Chairman*: In its petition taxpayer alleges that the Commissioner, in determining the deficiency here in issue, made the following errors:

(1) That the net income as reported in the original returns for each of the years 1919, 1920, and 1921, is incorrect and not supported by the financial records of the company, and the Commissioner was therefore in error in accepting such returns as a basis for the computation of its tax liability for the years under consideration and in rejecting the amended returns which it is alleged showed correct computations of net income.

(2) That the Commissioner erred in refusing to allow a deduction for each of the years under consideration representing a reasonable allowance for exhaustion, wear and tear of assets used in the business.

(3) That the Commissioner erred in refusing to allow as deductions for each of the years under consideration amounts actually paid to officers during those years as compensation for services rendered, in excess of the amounts claimed on the original returns.

(4) That the Commissioner has erroneously computed its profits-tax liability for each of the years 1919, 1920, and 1921, under the provisions of section 302 of the Revenue Acts of 1918 and 1921, although the tax when computed under the provisions of section 301, using the invested capital which can be determined for the purpose of determining the exemption, is less than that computed under section 302.

The acceptance or rejection of amended returns prepared and submitted to the Commissioner by taxpayers is a matter of internal administration in the Bureau of Internal Revenue, solely within the discretion of the Commissioner. It is no part of the duty of this Board, nor has it the right to decide in any manner questions of policy in the administration of the office of the Commissioner. *Appeal of Cleveland Home Brewing Co.*, 1 B. T. A. 87, 91. Therefore, the issue raised in the instant appeal relative to the filing of amended returns purporting to show correct computations of net income and the rejection of those returns by the Commissioner, is a question beyond the jurisdiction of this Board.

Taxpayer filed returns within the time prescribed by law purporting to show the correct net income for each of the years 1919 to 1921, inclusive. With the exception of the deductions for depreciation claimed therein, the Commissioner accepted these returns as a correct statement of all items of income and expense for the respective years. In 1922 the taxpayer employed an accountant to install a new system of accounting, who, in the course of his work, it is alleged, ascertained that the original returns were incorrect and not supported by the financial records. Amended returns for the years under consideration, which were substantially different from the original returns and showed a much less income for each year than the original returns, were prepared and submitted to the Commissioner, who rejected them.

The accountant who installed the new system of accounts and who prepared the amended returns testified on the stand that he made a careful and exhaustive analysis of the taxpayer's receipts and disbursements for the years under consideration and that the original returns were incorrect and not supported by the records. He submitted in evidence schedules prepared by him purporting to show a cor-

rect analysis of all items of income and expense for the years under consideration, supported by profit and loss statements and balance sheets, and testified that in his opinion such schedules correctly interpreted the accounts and showed a correct computation of net income for each of the years involved. In support of these detailed schedules the books of the company, comprising, as we have pointed out, check stubs and memorandum books recording expenditures from petty cash funds, were submitted in evidence.

We have examined the taxpayer's books of account, such as they are, and, to say the least, they are not susceptible of intelligent interpretation. Literally, there are hundreds of check stubs which bear nothing more than the serial number, date check was drawn, amount of check, and name of payee, and which bear no notation of the purposes for which the check was drawn. Of little value are the petty cash memorandum books as evidence, for we find the same lack of detail in the entries made therein as in the case of the check stubs. As far as we can ascertain, the accountant's schedules, purporting to show in detail a correct computation of the net income of each of the years under consideration, are not supported by the books. Accordingly, we conclude that neither the amended returns nor the schedules prepared by the accountant may be accepted as correctly reflecting the net income of the years 1919 to 1921, inclusive. Subject to such revision as will be later indicated herein, we approve the Commissioner's computation of net income for each of the years involved as a basis for determination of the deficiency.

The reason for the Commissioner's disallowance of the deductions claimed for depreciation in the original returns for 1919 and 1921 is not entirely clear from the record. It would appear, however, that his action was predicated upon the failure of the taxpayer to furnish satisfactory information relative to the costs of depreciable assets and the probable useful life of those assets from date of acquisition.

We have pointed out in our findings of fact that, during the years 1919, 1920, and 1921, the taxpayer expended the sums of $8,603.65, $242.90, and $1,292.60, respectively, in making permanent improvements to the premises which it occupied under a lease dated January 7, 1919, said lease having a life of 10 years, with an option of renewal for a further term of 10 years.

Where the cost of making permanent improvements to premises, of which it is the lessee, is borne by the taxpayer, the lease running for a definite term with a provision for the renewal thereof for a further term at the option of the lessee, the taxpayer is entitled to exhaust the cost of such improvements ratably over the number of years representing the remaining term of the lease plus the renewal term provided for, and is entitled to claim such ratable portion of

the cost applicable to each year as a deduction from income, unless the probable life of the improvements is less than the remaining term plus the renewal term, in which case the deduction must take the form of a depreciation allowance based upon the physical life of the improvements. *Appeal of Eimer & Amend,* 2 B. T. A. 603; *Appeal of Gladding Dry Goods Co.,* 2 B. T. A. 336; *Appeal of G. S. Stewart Co.,* 2 B. T. A. 1016.

The improvements made by the taxpayer to the leased premises occupied by it are of such a nature that, ordinarily, their probable useful life would be greater than the remaining term of the lease plus the renewal term. We have no evidence before us indicating that the facts are otherwise in this case. We conclude, therefore, that the taxpayer is entitled to a deduction from the income of each of the years under consideration representing a ratable portion of the cost of the improvements spread over a period from the date of installation to the end of the renewal period.

The taxpayer is entitled to a deduction for each of the years under consideration on account of depreciation of machinery and tools, office furniture and fixtures, and automobiles. The deductions should be predicated upon the costs set out in our findings of fact, and should be computed at the following rates:

|                                   | Per cent. |
|-----------------------------------|-----------|
| Machinery and tools               | 10        |
| Office furniture and fixtures     | 10        |
| Automobiles                       | 25        |

With respect to the deductions to which the taxpayer may be entitled for the years under consideration on account of salaries paid to executive officers, we call attention to our findings of fact, wherein we point out the material differences between the amounts of these deductions claimed in the original returns and those claimed in the amended returns, the latter amounts being also set out in the accountant's schedules offered in evidence as having actually been paid during the years involved.

We have attempted to verify the amounts shown by the amended returns and the accountant's schedules from the accounting records submitted in evidence, but have met only with dismal failure. The check stubs evidence only the following amounts paid to Joseph Kunkel:

**1919.**

| | |
|---|---|
| 51 payments of $35 each | $1,785 |

**1920.**

| | |
|---|---|
| 1 payment of $35 | 35 |
| 11 payments of $40 each | 440 |
| 29 payments of $45 each | 1,305 |
| 12 payments of $50 each | 600 |
| Total | 2,380 |

*1921.*

| | |
|---|---|
| 9 payments of $50 each_____ | $450 |
| 41 payments of $60 each_____ | 2, 460 |
| Total _____ | 2, 910 |

There was but one other executive officer, J. E. Brennan, and, if a salary was paid to him during the years involved, the payments apparently were included in the shop pay roll, since we find no evidence of specific payments to him on account of salary.

In the absence of competent evidence to prove that any greater amounts were paid to officers as salaries during the years under consideration than those claimed as deductions on ＊the original returns, we approve the Commissioner's action in refusing to allow the larger deductions contended for by the taxpayer.

The last allegation of error made by taxpayer relates to the action of the Commissioner in computing the profits-tax liability for each of the years involved under the provisions of section 302 of the Revenue Acts of 1918 and 1921, because of his inability satisfactorily to determine taxpayer's invested capital.

In our findings of fact we have set out, with one exception—and that relates to the aggregate income and profits taxes paid by the taxpayer during the years 1910 to 1918—all of the essential facts necessary to compute the taxpayer's invested capital for the years under consideration. We found that the original capital paid in was $10,000 cash, which has not been impaired; that the aggregate earnings from date of organization to and including the year 1918 were $12,154.11; and that prior to the year 1919 but one dividend was paid, and that was in the amount of $600 and paid in 1915

As a starting point in the determination of taxpayer's invested capital, there should be taken the sum of the original capital paid in plus the earnings to the close of 1918. From this sum there should be deducted the dividend paid in 1915, and the aggregate of all income taxes paid during the years 1910 to 1918, as evidenced by the tax returns for those years, if not already deducted in computing the net income set forth in the findings of fact. The resultant will represent the capital and earned surplus as of January 1, 1919, which should be increased or decreased according to the financial history of the taxpayer for the three years involved.

The profits-tax liability should be computed under the provisions of section 301 of the Revenue Acts of 1918 and 1921, using for that purpose the invested capital determined in the manner herein outlined, provided, of course, that the tax as thus computed does not exceed the maximum limitations prescribed by section 302.