## PITTSTON–DURYEA COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7476.

Circuit Court of Appeals, Third Circuit.

Jan. 24, 1941.

Leo W. White, of Pittston, Pa., and Robert S. Pasley, Jr., of New York City (Leo W. White, of Pittston, Pa., and Robert S. Pasley, Jr., of New York City, of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Lee A. Jackson, Sp. Assts. to Atty. Gen., for respondent.

Before BIGGS, MARIS, and GOODRICH, .Circuit Judges.

GOODRICH, Circuit Judge.

This appeal from a decision of the Board of Tax Appeals raises the question of the proper interpretation of section 114 (b) (4) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 702.[1]

In 1934 the Pittston-Duryea Coal Company, the taxpayer, acquired leases of certain coal mining property in Pennsylvania

---

[1] "The allowance for depletion under section 23(m) shall be, in the case of coal mines, 5 per centum * * * of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property. A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer, or of any other person if the basis of the property (for determining gain) in his hands is, under section 113, determined by reference to the basis in the hands of such taxpayer, either directly or through one or more substituted bases, as defined in that section."

without any original cost. These properties were mined by the taxpayer in 1934 and 1935 and during those years were the only properties worked by it. Its mining operations in 1934 resulted in a net loss, without any allowance for depletion, although it did have other income, mainly from breaker operations. No deduction for depletion was set forth in the 1934 return, nor was any statement made in the return as to the basis for computing depletion, because the property had no cost basis and a loss was sustained from the mining operations. In 1935 the taxpayer realized a net profit from its mining operations and claimed a deduction for depletion computed by the percentage method. The Commissioner disallowed the deduction on the ground that the taxpayer's failure to elect the percentage basis for depletion in its 1934 return committed it irrevocably thereafter to the cost basis, and since the cost was zero the taxpayer was not entitled to any depletion allowance. The Board sustained the Commissioner.

Section 23 (m) of the Revenue Act of 1934 grants as a deduction from gross income "a reasonable allowance for depletion". The basis for depletion is referred by § 23 (n) to § 114. Section 114 (b) (1) provides that the basis for depletion is governed by the provisions of § 113 (b) except as provided in subsections 2, 3 and 4 of § 114 (b). So far as is here material the basis provided for by § 113 (b) is cost. In section 114 (b) (4) it is provided that:

"* * * A taxpayer making his first return under this title in respect of a property shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer * * *."

■■ We disagree with the government's contention that this section required the taxpayer to choose either the percentage or cost method of computing depletion in its 1934 return. The argument is based upon what is to us an unwarranted emphasis upon the words: "A taxpayer making his first return under this title * * *." Statutes are not to be read piecemeal; particular phrases derive content from the context. Further, "statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose". Haggar Co. v. Helvering, 1940, 308 U.S. 389, 394, 60 S. Ct. 337, 339, 84 L.Ed. 340. We think it would be an absurd result to construe this statute to require the taxpayer to choose a method of depletion and to state the method when there is nothing from which to make the deduction.

■ Two purposes are clearly evident in the section under consideration. The first is to give to the taxpayer the choice of electing the method of computing its depletion allowance in a particular year. The second is to hold him to that method in succeeding years. The point is that primarily the taxpayer is to have an election as to the computation of its depletion allowance. The second result flows from the first.

We recently decided that the word "allowed" contemplates an actual deduction from taxable income. Pittsburgh Brewing Co. v. Commissioner of Internal Revenue, 3 Cir., 1939, 107 F.2d 155. It was pointed out in that decision that a deduction is the subtrahend in the process of subtraction.

■■ Regardless of what may be the situation in higher mathematics, one may not in making an income tax return use the subtrahend of deduction unless he has a minuend of net income from which to subtract it. Since the taxpayer in this case could not have had a deduction in 1934 under either method, it cannot be said to have made an election, which consists of a choice of alternatives. In this election there were no candidates, for there was no original cost, and no profit on which a deduction could be taken. It will be noted that the word "elects" in the statute is used with reference to "the depletion allowance for such property for the taxable year". It seems to us that the common sense effect of this provision is that the choice was to be made at a time when there could be a depletion allowance. The words "first re-

turn" must be read in the light of these considerations and, so read, we think the reasonable meaning is that the taxpayer must make its choice in the first taxable year in which it could have a depletion allowance under one of the methods of computation.

Nothing said by the Supreme Court in J. E. Riley Investment Co. v. Commissioner of Internal Revenue, 1940, 311 U.S. 55, 61 S.Ct. 95, 97, 85 L.Ed. ——, militates against the conclusion here reached: It was there held that a taxpayer could not change the choice he was deemed to have made by an amended return filed after the end of the period for the filing of the "first return". But the taxpayer there did have a profit on its 1934 operations and therefore a deduction was available if computed by the percentage method. The point unsuccessfully urged upon the Supreme Court was that the taxpayer was excusably ignorant of the right to use the percentage method.

Nor are the practical considerations mentioned in the Riley case here operative. Obviously, this taxpayer is not put in a position where it may "shift from one basis of depletion to another in light of developments subsequent to [its] original choice", since the opportunity for making the original choice was not available in 1934.

The decision of the Board of Tax Appeals is reversed.