MOTHER LODE COALITION MINES CO. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 94.   Argued November 19, 1942.—Decided December 7, 1942.

*Mr. Paul E. Shorb,* with whom *Messrs. Charles A. Horsky* and *John T. Sapienza* were on the brief, for petitioner.

*Mr. Valentine Brookes* argued the cause, and *Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Sewall Key, Samuel H. Levy, Carlton Fox,* and *Archibald Cox* were on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

The ultimate question presented by this case is whether petitioner is entitled to a deduction in its 1935 income tax return for percentage depletion under § 114 (b) (4) of the

Revenue Act of 1934, 48 Stat. 680, which allowed the deduction from gross income in the case of mines, etc., of specified percentages of gross income, but not to exceed 50% of the net income computed without regard to depletion allowance, and required that:

"A taxpayer making his *first return under this title in respect of a property* shall state whether he elects to have the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion, and the depletion allowance in respect of such property for such year shall be computed according to the election thus made. If the taxpayer fails to make such statement in the return, the depletion allowance for such property for such year shall be computed without reference to percentage depletion. The method, determined as above, of computing the depletion allowance shall be applied in the case of the property for all taxable years in which it is in the hands of such taxpayer, . . ." [1]

The pivotal question is whether petitioner's income tax return for 1934 or for 1935 was the first return in respect of its mining property within the meaning of § 114 (b) (4). During the tax year 1934, petitioner's copper mine was closed. In its 1934 income tax return, petitioner reported gross income from the sale of ore mined the previous year, but the deductions, most of which were attributed to "Shutdown Expense," were such that there was no net income. Petitioner claimed no depletion allowance in that return—depletion allowances prior to 1933 had exhausted petitioner's cost basis—and made no statement with regard to percentage depletion. In 1935, petitioner derived a net profit from the operation of its mine and claimed a deduction for percentage depletion, stating that it had elected percentage depletion for the future in its 1933

---

[1] Emphasis added.

return, filed under § 114 (b) (4) of the Revenue Act of 1932, 47 Stat. 169. The Commissioner disallowed the percentage depletion deduction for 1935, ruling that, under § 114 (b) (4) of the 1934 Act, petitioner's 1934 return was its first return in respect of its mining property and that its failure to make an affirmative election in that return constituted an election to compute depletion thereafter without reference to percentage depletion. Accordingly, the Commissioner made a deficiency determination which the Board of Tax Appeals sustained. The court below affirmed. 125 F. 2d 657. We granted certiorari because of an asserted conflict with the decision in *Pittston-Duryea Coal Co.* v. *Commissioner*, 117 F. 2d 436.[2]

Section 114 (b) (4) required petitioner to elect in its "first return under this title [income tax] in respect of a property" whether its depletion allowance was to be computed with or without regard to percentage depletion, and the method thus chosen became binding for the subsequent taxable years. Petitioner's 1934 return falls within the exact statutory definition of "first return." It was the first return filed under the 1934 Act, and it was "in respect of" the mining property since it listed items of gross income and deductions arising out of that property. Petitioner's failure there to state its election foreclosed any subsequent claim to percentage depletion. This has been the administrative interpretation. Article 23 (m)–5 of Regulations 86.[3] We think this regulation is

---

[2] In granting the writ, we excluded argument on the point, decided adversely to petitioner below, that its election to take percentage depletion in its 1933 return under the Revenue Act of 1932 made unnecessary a new election under the Revenue Act of 1934.

[3] This Article provides in part as follows: "In his first return made under Title I of the Act (for a taxable year beginning after December 31, 1933) the taxpayer must state as to each property with respect to which the taxpayer has any item of income or deduction whether he elects to have the depletion allowance for each such property for the taxable year computed with or without reference to percentage

binding because not only is it practically compelled by the words of § 114 (b) (4), but also it is a reasonable interpretation which, as will be shortly pointed out, is fair and workable in its operation.

Petitioner asserts that this interpretation fails to give effect to the meaning of § 114 (b) (4) as a whole, and contends that, when such effect is given, "first return" must mean the first return in which a depletion allowance could be claimed. The argument for this result runs as follows: Section 114 (b) (4) requires the taxpayer to state in its first return whether it elects to have "the depletion allowance for such property for the taxable year for which the return is made computed with or without regard to percentage depletion," and then provides that "the depletion allowance in respect of such property for such year shall be computed according to the election thus made"; therefore, the "first return" must be one in which petitioner could elect to have the "depletion allowance . . . for the taxable year" computed with or without reference to percentage depletion; and, in its 1934 return, petitioner could not so elect because a percentage depletion allowance is limited in any case to 50% of net income and it had no net income.

The fallacy of this argument is apparent, and the fault lies in the final step. The statute provides for the election of a method of computation for the present and the future; it does not, contrary to petitioner's assertions, make the necessity for election depend upon whether an allowance actually results from the method of computation chosen. Petitioner could have elected in 1934 to have the depletion allowance for 1934 "computed with

---

depletion. . . . If the taxpayer fails to make such statement in the return in which the election should be so indicated, the depletion allowance for the year for which an election must be first exercised and for all succeeding taxable years will be computed without reference to percentage depletion."

or without regard to percentage depletion," and the computation could then have been made according to the method chosen. It so happened that petitioner was not entitled to any allowance in 1934; its depletable cost had been exhausted, and computation on the percentage basis would have resulted in nothing. So the choice had no significance for that year, *but,* that could be ascertained only after the computation was made. The idea that it would be absurd to compel an election until a deduction actually resulted, see *Pittston-Duryea Coal Co.* v. *Commissioner,* 117 F. 2d 436, 438, is best answered by the fact that the statute gave taxpayers an opportunity to elect a depletion program for the present and future years; nothing in it indicates that Congress was concerned with whether a depletion allowance actually resulted in each year from the program selected.

Petitioner's contentions really resolve into the proposition that "first return" means "first return made by a taxpayer having net income derived from a property." But the statute does not speak of first return showing net income, and there is nothing to indicate that such was Congress' intention.[4] Furthermore, as the court below pointed out, 125 F. 2d 657 at p. 659, if petitioner had a basis for cost depletion in 1934, it would have been put to an election in that year even though it had no net income, because cost depletion allowance is in no manner dependent upon the existence of net income. The fact

---

[4] Petitioner relies upon the remarks of Representative Disney, who offered an amendment to § 114 (b) (4) of the Internal Revenue Code, as part of the Revenue Act of 1942, which would have written the petitioner's interpretation into the statute with the explanation that the amendment clarified the original Congressional intent. Hearings Before House Committee on Ways and Means on Revenue Revision of 1942, 77th Cong., 2d Sess., p. 3489. However, this amendment was rejected in Committee. Section 145 (a) of the Revenue Act of 1942, approved October 21, 1942, eliminates the necessity of election, but nothing in its legislative history casts any light upon our problem.

that petitioner's depletable cost was exhausted is no reason for expanding the statutory definition. Section 114 (b) (4) is a liberal offer limited to those who meet the exact statutory terms. *Riley Investment Co.* v. *Commissioner,* 311 U. S. 55.

Strong practical considerations also support the Commissioner's construction of the statute and warrant rejection of petitioner's "first return with net income" theory. All taxpayers are put on an equal basis if they must elect their depletion program in the first return filed "in respect of a property"; a taxpayer, situated as petitioner, is not then free to defer election until it has net income at some future date when conditions may be such that its election can be made more advisedly than that of its competitors. Secondly, administrative simplicity and certainty are best achieved by the Commissioner's interpretation. If, by "first return made by a taxpayer having net income derived from a property," petitioner means first return for a year in which there actually was net income, cf. *Kehoe-Berge Coal Co.* v. *Commissioner,* 117 F. 2d 439, it could not be known in some cases whether a taxpayer was put to its election in 1934 or a later year until after finally determining, perhaps after protracted litigation, whether or not the taxpayer had actual net income in 1934. The uncertainty and confusion thereby created would be most undesirable; a taxpayer could not intelligently plan its operations, and the Bureau of Internal Revenue would be compelled to keep open all the returns for subsequent years in order to check the later depletion deductions. If it is petitioner's contention that the critical fact of net income is disclosed by the face of the return, the obligation to state an election would depend to some extent upon the errors of the taxpayer, a consequence which it is not to be presumed that Congress intended.

The judgment below is

*Affirmed.*