OPINION. Hill, Judge: The first issue for decision here is whether petitioner is entitled to any credit in computing surtax on undistributed profits because of the provisions of a written contract executed by the corporation prior to May 1, 1936, dealing with the disposition of its earnings and profits of the taxable years, within section 26 (c) (2) of the Revenue Act of 1936.[1] In 1935 three individuals, Toddie L. Wynne, C. W. Murchison, and Dudley S. Golding, who were the sole stockholders of the American .Liberty Oil Co., conceived the idea of unifying certain oil-gathering systems owned or controlled by their corporations and in that connection it was also proposed to acquire other properties and to construct certain additional pipe lines. In order to carry out the project it was necessary to borrow a considerable amount of money. The matter of a loan was taken up with a bank at Dallas, Texas, and. after oral discussion in reference to the issuance and sale of bonds, Wynne addressed a letter to the bank under date of November 5, 1935, outlining the proposed transaction. Under date of November 21, 1935, another letter was addressed to the bank by Wynne and Murchison, reciting in detail the terms and conditions of the proposed bond issue in the amount of $1,250,000, and requesting a reply from the bank in writing. By letter dated December 13,1935, addressed to Murchison and Wynne, the bank stated that it would “place this First Mortgage 6% Note issue at the face amount thereof,” as and when certain stipulations and conditions set out therein had been fully met and complied with. One of the stipulations in the bank’s letter was that in no event would the bank be obligated in anywise under its commitment unless the contemplated construction program was fully and ■finally completed and presented to the bank for acceptance on or before June 30, 1936. Murchison and Wynne noted their acceptance of the bank’s proposal by signing their names at the bottom of the last page of the letter. This correspondence substantially constitutes the alleged written contract upon the basis of which petitioner claims the credits in controversy. Petitioner asserts that it subsequently, but prior to May 1, 1936, “executed the written contract” by way of ratification and adoption. This contention will be further considered as a separate point here-inbelow. The first question posed by the facts is whether the correspondence constituted a written contract executed prior to the date stated in the statute. We think it did not. By the plain and unambiguous language of the bank’s letter the tentative commitment to place the bond issue was not to become effective, and the bank was not to be bound in anywise thereby, unless and until at some future date prior to June 30, 1936, the specified conditions precedent had been complied with. On June 18, 1936, compliance with those conditions was fully and finally completed, and thereupon the bank’s tentative commitment became a definite obligation. On the same, date, the mortgage and notes were executed by petitioner and the proceeds of the bond issue were paid over to it. That all of the parties concerned understood and recognized that the bank’s commitment was wholly prospective prior to performance of the specified conditions is clearly indicated by statements appearing in connection with orders placed for pipe and other materials, covered by assignments of proceeds of the proposed loan. In accepting such an assignment, the National Supply Co. required an additional guarantee of payment by the American Liberty Oil Co. in the event the commitment of the bank was not fulfilled. In the case of the Oil Well Supply Co., the assignment was designated as collateral security for payment of the amount to become due; and in the collateral agreement by which $200,000 of the proposed loan was pledged to the bank for the benefit of the American Liberty Oil Co., the bank’s acceptance of the pledge was subject to the notation “as and if such proceeds become available.” It seems clear to us that, not only was the bank not bound by its conditional commitment prior to June 18, 1936, but neither was petitioner. nor its promoters, bound to perform the conditions. Petitioner argues that the contract was for the benefit of third persons, and that after assignments of the proceeds petitioner was definitely obligated to complete performance of the agreement. It is obvious, however, that petitioner would not have been so bound if it had discharged its obligations to the contractors out of funds from other sources, as it might have done without breaching any agreement with the bank. The terms of the bank’s letter of December 13. 1935, constituted an offer of an unilateral contract, and the acceptance by petitioner’s promoters was merely an authentication of the terms of the offer. The contract was “executed,” within the meaning of that word as used in the statute, upon performance of the conditions precedent on June 18, 1936. Even if the. agreement had been executed by petitioner, it would not have been a contract within the provisions of section 26 (c) (2), supra. Bethlehem Silk Co. v. Commissioner, 124 Fed. (2d) 649, affirming 43 B. T. A. 515; Florence Cotton Mills, 44 B. T. A. 436; affd., 126 Fed. (2d) 1017; Morgan Manufacturing Co., 44 B. T. A. 691; affd., 124 Fed. (2d) 602. In the second place, the contract was not signed or executed by petitioner corporation. It is insistently argued by petitioner that its contract for material and the assignments in its behalf of portions of the proceeds of the bank’s tentative commitment, in January 1936, constituted ratification and adoption of the contract by it in writing. It is to be noted that only one such contract was executed by petitioner, the others having been signed by the promoters, and in none of them are to be found any express words of ratification or adoption. In our opinion, the assignments amounted to no more than an effort on the part of petitioner to avail itself of benefits under the agreement with the bank. If the assignments could be said in any proper sense to have constituted ratification, such conclusion must rest upon farfetched inference, which is not enough to show execution of a written contract by the corporation within the intendment of the statute. And the fact that petitioner may have considered itself bound by the agreement and carried out its terms is unimportant. Kolor-Thru Corporation, 44 B. T. A. 1303; Schwabacher Hardware Co., 45 B. T. A. 699; Mastin Realty & Mining Co. v. Commissioner, 130 Fed. (2d) 1003. The attenuated distinctions on the. facts which petitioner seeks to draw between the present proceeding and the cited decisions do not avail it in establishing its right to the claimed credits. Since the statute grants a special credit in the nature of a deduction, subject to precisely stated limitations, petitioner must be held to strict compliance with its terms. Helvering v. Ohio Leather Co., 317 U. S. 102. Finally, petitioner’s claim must be disallowed on still another ground. Section 26 (c) (2) allows a credit equal to the portion, of the earnings and profits which, in accordance with the other provisions, is required to be and is in fact paid within the taxable year in discharge of a “debt,” or irrevocably set aside within the taxable year for such purpose. It is further provided, however, that the word “debt” as used in the statute does not include a debt incurred after April 30, 1936. Petitioner attempts to support its position by asserting that the mortgage notes executed by it on June 18, 1936, represented in part merely a renewal of the debts incurred by it in January 1936 for materials and services. We can not agree. The latter debts were fully discharged and satisfied out of the proceeds of the bank’s loan, and a new debt, owing to another and different creditor, in a different amount, and upon entirely different terms and conditions, was incurred after April 30.1936. It was in discharge of the debt incurred on June 18, 1936, that petitioner’s earnings and profits of the taxable years were required to be and were paid. On the first issue, respondent’s determination is approved. The second issue involves the question whether petitioner is entitled to change its method of valuing inventories of crude oil in the taxable year 1938 from the basis of cost, as used in the prior years, to cost or market, whichever was lower. In its income tax return for the fiscal year ended November 30,1936, which was petitioner’s first return, it was stated that the basis used was cost. The same statement was made in petitioner’s return for the fiscal year 1937. In those years there was no difference between cost and market. In 1938 the price of crude oil declined below cost of the oil which petitioner had on hand. At the close of 1938 petitioner inventoried at cost, but set up a “reserve for loss” accounts to which is charged such difference. As oil was sold, the reserve account was credited, since the loss on sales would be reflected in the cost of goods sold. At the end of 1938 the balance of the reserve account amounted to $34,473.69, which respondent included in petitioner’s income for that year as an understatement of inventory. Petitioner stated in its income tax return for 1938 that its inventories were valued at cost or market, whichever was lower. The question now is whether petitioner made a binding election in its 1936 and 1937 returns to inventory at cost, which method it could not change in a subsequent year without permission of the Commissioner, whicti permission admittedly was not obtained. Technically, of course, petitioner consistently valued its inventories at cost in all of the years mentioned, but the practical effect of its bookkeeping was to change to the lower of cost or market in 1938. Petitioner’s contention on this point, briefly, is that it did not intend to exercise an election by the answers made in its earlier returns; that such answers merely stated a fact; and that, since there was no difference between cost and market in 1936 and 1937, there was no occasion for it to make an election in those years. The question presented here, was considered by us on substantially similar facts, and decided adversely to petitioner’s contentions, in Lenox Clothes Shops, Inc., 45 B. T. A. 1122, 1127 (on appeal, C. C. A., 6th Cir.). Also compare Mother Lode Coalition Mines Co. v. Helvering. 317 U. S. 222. On the second issue, respondent is affirmed. Decision will he entered under Rule 50. SEC. 26. CREDITS OF CORPORATIONS. In the ease of a. corporation the following credits shall be allowed to the extent provided in the various sections imposing (ax— *•»#*** (c) Contracts Restricting Payment of Dividends.— [[Image here]] (2) Disposition of profits of taxable year. — An amount equal to the portion of the earnings and profits oí ihr taxable year which is required (by a provision oí a written contract executed by the corporation prior to May 1. 1936 which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year m discharge of a debt, or to be irrevocably set aside withiD the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. * * * As used in this paragraph, the word “debt” does not include a debt incurred after April 30, 1930.