SCHALL & CO., Inc., a corporation,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

United States District Court,
S. D. New York.

Nov. 19, 1954.

Edwards & Smith, New York City, by A. Bruce Bielaski, Jr., John F. Dailey, Jr., New York City, of counsel, for plaintiff.

J. Edward Lumbard, U. S. Atty. for Southern Dist. of New York, New York City, by Philip M. Drake, Asst. U. S. Atty., New Rochelle, N. Y., of counsel, for the United States.

GODDARD, District Judge.

This is a claim for refund of excess profits tax paid by the plaintiff on the basis of the Commissioner's computation of the tax liability.[1] Plaintiff had

---

1. The pertinent provisions of the Internal Revenue Code are as follows:

"§ 712. Excess profits credit—Allowance

"(a) Domestic corporations.

"In the case of a domestic corporation which was in existence before January 1, 1940, the excess profits credit for any

filed an excess profits tax return for its fiscal year ending April 30, 1946, by July 15, 1946, as required by law. Section 53, Internal Revenue Code. Although the excess profits tax was repealed for 1946 and later years, it was retained for the 1945 portion of fiscal years begun in 1945 and ended in 1946. Revenue Act of 1945. Ch. 453, Title 1, 59 Stat. 568 and 571, §§ 122 and 131, 26 U.S.C.A.Int.Rev.Acts, pages 573, 575. Hence the tax in question relates to the 1945 portion only of the taxpayer's fiscal year.

Taxpayer computed its tax on the invested capital method, and filed its return on the prescribed Form 1121. That form contained a question, lettered "(e)", asking if the taxpayer elected to include in excess profits net income interest received on government obligations. The question was propounded pursuant to Section 720(d) of the Internal Revenue Code to permit taxpayers to indicate whether they wished to take advantage of that section.

Plaintiff did not answer the question although the form called for a "yes" or "no" answer. Plaintiff did not include in its excess profits net income any interest received on government bonds held by the Schall Company, but neither did it reduce the average invested capital to adjust for inadmissible assets as required by Sections 715 and 720(b).

The Commissioner, thereafter, recomputed the tax liability by reducing the average invested capital in the proportion required by Section 720(b) to account for the government bonds held by the plaintiff. This reduction in capital resulted in a lower credit and consequently a higher tax. Plaintiff was notified of the deficiency and filed an amended return before the tax was assessed. On this return the plaintiff expressly answered the question "(e)" in the affirmative. This was in July, 1949, two years after the taxpayer's due date for filing a return. The Commissioner refused to accept this return and assessed a deficiency which was paid by

taxable year shall be an amount computed under section 713 or section 714, whichever amount results in the lesser tax under this subchapter for the taxable year for which the tax under this subchapter is being computed. In the case of all other domestic corporations the excess profits credit for any taxable year shall be an amount computed under section 714."

"§ 714. Excess profits credit—Based on invested capital

"The excess profits credit, for any taxable year, computed under this section, shall be the amount shown in the following table:

"If the invested capital for the taxable year, determined under section 715, is: Not over $5,000,000 * * * The credit shall be 8% of the invested capital. * * *"

"§ 720. Admissible and inadmissible assets

"(a) Definitions.

"For the purposes of this subchapter

"(1) The term 'inadmissible assets' means

*       *       *       *       *

"(B) Except as provided in subsection (d), obligations described in section 22(b)(4) any part of the interest from which is excludible from gross income or allowable as a credit against net income.

"(2) The term 'admissible assets' means all assets other than inadmissible assets.

"(b) Ratio of inadmissibles to total assets.

"The amount by which the average invested capital for any taxable year shall be reduced as provided in section 715 shall be an amount which is the same percentage of such average invested capital as the percentage which the total of the inadmissible assets is of the total of admissible and inadmissible assets. * * *

*       *       *       *       *

"(d) Treatment of government obligations as admissible assets.

"If the excess profits credit for any taxable year is computed under section 714, the taxpayer may in its return for such year elect to increase its normal-tax net income for such taxable year by an amount equal to the amount of the interest on, reduced by the amount of the amortizable bond premium under section 125 attributable to, all obligations held during the taxable year which are described in section 22(b). (4) any part of the interest from which is excludible from gross income or allowable as a credit against net income. In such case, for the purposes of this section, * * * the term 'inadmissible assets' does not include such obligations."

the plaintiff who filed this claim for refund.

Plaintiff contends that even though it failed to answer the question, there was an overt act on its part which manifested an intention to make an affirmative election. The act referred to is the inclusion in its return of government obligations as "admissible assets". The failure to also include interest on those assets as part of taxable income is explained as an error rather than as evidence of a negative election or even of a failure to elect. Plaintiff compares its situation to that of the taxpayer in Burke & Herbert Bank & Trust Co. v. Commissioner, 10 T.C. 1007, who was found to have made an affirmative election despite his failure to include some of the interest as taxable income. But there the taxpayer had expressly answered question "(e)" in the affirmative and had included as income the interest on some of the government obligations which it held. It merely withheld interest on obligations of a government corporation under the mistaken belief that inclusion of interest on such obligations was not required by Section 720(d). The court held that this omission did not nullify a clearly expressed intention to include the interest on government obligations and that the Commissioner could rectify the error within the framework of the affirmative election by including the amount of the disputed interest item. In the case at bar the taxpayer neither answered the question nor included any interest at all in its excess profits net income.

Nor is the case of Farmers & Merchants Bank of Platte v. United States, 8 Cir., 85 F.Supp. 722, of any help to the plaintiff. There the court permitted the taxpayer's return to be corrected and reformed by changing the answer to question "(e)" from "yes" to "no". The court found that the word "yes" had been inadvertently inserted and that the taxpayer's real intention was to put in the word "no". That a negative answer was intended was shown by the taxpayer's original worksheets and by its

computation of the tax, a computation which required working out the proportion indicated by Section 720(b). Here there is no such evidence bearing on the plaintiff's intent.

Plaintiff attempts to prove its intent to include in net income the interest on government bonds by stating that it included the amount of the bonds in admissible assets. Actually it included the amount of the bonds not as admissible assets per se, but as part of the figure representing invested capital. Such inclusion of the bonds results in a higher credit and a lower tax. Inclusion also of the interest in net income would have resulted in a higher income figure and a higher tax. The taxpayer is not entitled to the greater credit unless it first satisfies the condition of showing the higher income figure. Having failed to accept the condition which alone entitles it to the greater credit, the taxpayer cannot prove it intended to meet the condition by having merely taken the increased credit. Taxpayer's inclusion of the bonds in invested capital indicates no more than that it intended to obtain the maximum allowable credit. It does not prove an attempt to make the assets "admissible", which could be done only by including at the same time the interest therefrom in net income.

■ Furthermore, an examination of the taxpayer's original return reveals that the form contains questions lettered "(a)" through "(j)"; that questions "(a)", "(b)", "(c)", and "(f)" were answered; that of the answered questions only "(f)" called for a "yes" or "no" answer and was answered "no"; and that of the remaining questions, other than "(e)", all would have to be answered negatively by this taxpayer as they relate to it. Plaintiff asks that question "(e)" alone be considered as having been answered in the affirmative. The Tax Court has said:

"To place upon respondent [Commissioner] in such circumstances the responsibility of discovering at the peril of the revenue whether a return means what it fairly appears

to. say- seems to us to· create an unbearable administrative burden." Estate of Daniel Bleser, 41 B.T.A. 643, 650.

The same considerations apply here. The Commissioner is not required to discover at the peril of the revenue whether the taxpayer intended to include government obligations as admissible assets. The statute clearly. states, § 720 (a) (1) (B), that such assets are to be considered inadmissible· unless the taxpayer specifically elects to make them admissible by including income therefrom. Even if this court does not find that the taxpayer, by its return, fairly indicates a negative choice, still the failure to make any choice at all justifies the Commissioner, under the statute, to treat the assets as inadmissible.

Plaintiff further contends that the amended return is the one under which the tax due should be computed whether the former return is deemed to have constituted a negative election, or no election at all. Assuming the original return did constitute an election, the plaintiff maintains that it should not be held binding. Plaintiff concedes the usual rule to be that an election once made is binding except in rare instances, see Estate of Curtis, 36 B.T.A. 899, 906, but relies on two cases which have made exceptions to the rule: McIntosh v. Wilkinson, D.C., 36 F.2d 807, and Lucas v. Sterling Oil & Gas Co., 6 Cir., 62 F.2d 951.. The McIntosh case upheld the right of husband and wife to file joint returns after separate returns had already been filed. In so ruling the court. stated that under purely equitable doctrines there is theoretically no limit in point of time to a right to elect. But the court carefully limited its discussion to the case where the. amended return was filed before the due date. And it has been held that the right of choice is exhausted on the expiration of the time for filing returns. Grant v. Rose, D.C., 24 F.2d 115; Buttolph v. Commissioner of Internal Revenue, 7 Cir., 29 F. 2d 695. To hold otherwise would operate to enlarge the statutory period for filing

returns to include the period for recovering overpayments, see Pacific National Co. v. Welch, 304 U.S. 191, 194, 58 S.Ct. 857, 82 L.Ed. 1282, but such extension is a legislative, not a judicial function. See Riley Investment Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36.

In the Lucas case the court held an election in the original return to treat certain expenditures as capital rather than as operating expenses was not binding and could be changed by an amended return, on the ground that the original return was filed without complete knowledge of material facts. It would be a sufficient distinction to say that in the case at bar all material facts were known to the taxpayer at the time of filing the original return. It might also be noted, however, that the section of the statute in consideration there made the election binding not for one year only, but for all subsequent years. The court indicated that its decision was greatly influenced by a consideration of the effect of the election on future returns. In the present case the statute makes the election binding for one year only, so Lucas is no authority for disturbing the finality of an election once made.

■ Assuming, however, that no election was made in the original return, plaintiff asserts that the election was properly made in the amended return. The right to file amended returns is said to be granted by Section 322 of the Internal Revenue Code. But that section makes no reference to amended returns. It is a statute of limitations for the filing of refund claims, and as has already been observed cannot be used to enlarge the period for filing returns. Section 53, Internal Revenue Code. Pacific National Co. v. Welch, supra. This is not a case where the taxpayer is merely demanding a correct computation of his tax for a prior year based on facts as they existed. Plaintiff seeks rather to change the basis upon which its tax is to be computed. Cf. Riley Investment Co.. v. Commissioner of Internal Reve-

nue, supra, 311 U.S. at page 58, 61 S. Ct. 95.

 The filing of amended returns is not a matter of statutory right, see Levy v. United States, 3 Cir., 271 F. 942, 943, their acceptance or rejection is a matter of internal administration in the Bureau of Internal Revenue, solely within the discretion of the Commissioner. Kunkel & Co., Inc. v. Commissioner of Internal Revenue, 3 B.T.A. 133, 137; see also Keeler v. Commissioner of Internal Revenue, 10 Cir., 180 F.2d 707, 710. That discretion will be upset only upon a showing that it has been abused. Cf. Morrow, Becker & Ewing, Inc., v. Commissioner of Internal Revenue, 5 Cir., 57 F.2d 1. No abuse of discretion is shown in this case in the Commissioner's refusal to accept the amended return.

Plaintiff adverts to the regulations under the excess profits tax law enacted after repeal of the law applicable to the case at bar. Since the sections in question are very similar, the policy of the previous Act is said to be reflected in the regulations under the new Act. Those regulations are said to support the plaintiff's contentions since they permit a change of election to be made within the statutory period of limitations for filing refund claims. Reg. 130 Sec. 40.-440–1. However, the regulations grant such privilege only "subject to the approval of the Commissioner", which seems to acknowledge that under present law also what has already been said, namely—that there is no right to file an amended return but only a privilege granted at the discretion of the Commissioner—is still the rule.

While it is true, as plaintiff asserts, that section 720(d) is a remedial section designed for the taxpayer's relief and should therefore be liberally construed, it is also true that the changing back and forth by taxpayers would unduly inconvenience the Commissioner in the orderly administration of the Revenue Acts. See Estate of Curtis, 36 B.T.A. 899, 906.

The claim for refund must therefore be denied.

Proposed findings of fact and conclusions of law to be submitted promptly upon five days' notice.