**DANIELS JEWELERS, INC.**
v.
**UNITED STATES.**
No. 577–57.

United States Court of Claims.
June 8, 1960.

Abraham S. Guterman, New York City, for plaintiff.

George T. Qualley, Arlington, Va., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland, and Lyle M. Turner, Washington, D. C., on the brief, for defendant.

LARAMORE, Judge.

Plaintiff sues for the refund of excess profits taxes paid for the years 1951, 1952, and 1953, in the total amount of $24,117.78, plus interest thereon as provided by law.

The facts in this case have been stipulated and are summarized as follows:

The plaintiff filed its corporate income tax return (Form 1120) and a computation of its excess profits tax (Schedule EP, Form 1120) for the year 1950, on May 14, 1951. Similar returns for the years 1951, 1952, and 1953, were filed on April 25, 1952, March 16, 1953, and May 14, 1954. All the taxes due under these returns have been paid. In each of the returns, plaintiff reported income from installment sales on the installment basis provided for by Section 44(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 44(a).

On October 13, 1955, the plaintiff filed amended returns for each of the four years involved. The basis for the amended returns was an election pursuant to Section 455 of the Excess Profits Tax Act of 1950, 64 Stat. 1137, 26 U.S.C. § 455 (1952 Ed.), to compute its installment income on the accrual basis for the purpose of the excess profits tax. The Act applied to taxable years ending after June 30, 1950, and beginning before January 1, 1954. Section 455 thereof is in pertinent part as follows:

"(a) *Election to accrue income.* Any taxpayer computing income from instalment sales under the method provided by section 44(a) or whose principal business consists in

purchasing instalment sales obligations may elect, in its return for the taxable year, for the purposes of the tax imposed by this subchapter, to compute, in accordance with regulations prescribed by the Secretary, its income from instalment sales or instalment sales obligations on the basis of the taxable period for which such income is accrued without treating any portion of such income as unrealized at the close of such period, in lieu of the basis provided by section 44(a). Such election shall be irrevocable when once made and shall apply also to all subsequent taxable years to which this subchapter is applicable and the income from instalment sales or instalment sales obligations for each taxable year before the first year with respect to which the election is made which ended after June 30, 1950, shall be adjusted for the purposes of this subchapter to conform to such election. In making such adjustments, no amount shall be included in computing excess profits net income for any excess profits tax taxable year on account of instalment sales made in taxable years ending before July 1, 1950.

\* \* \* \* \* \*

"(c) *Adjustment on account of changes with respect to installment basis taxpayers and with respect to taxpayers with income from long-term contracts.* If an adjustment specified in subsection (a) or subsection (b) is, with respect to any taxable year, prevented on the date of the election by the taxpayer under subsection (a) or subsection (b), as the case may be, or within two years from such date, by any provision or rule of law (other than this subsection and other than section 3761, relating to compromises), such adjustment shall nevertheless be made if in respect of the taxable year for which adjustment is sought a notice of deficiency is mailed or a claim for refund is filed, as the case may be, within two years after the date such election is made. If at the time of the mailing of such notice of deficiency or the filing of such claim for refund, the adjustment is so prevented, then the amount of the adjustment authorized by this subsection shall be limited to the increase or decrease in the tax imposed by this chapter previously determined for such taxable year which results solely from the effect of subsection (a) or subsection (b), as the case may be, and such amount shall be assessed and collected, or credited or refunded, in the same manner as if it were a deficiency or an overpayment, as the case may be, for such taxable year and as if on the date of such election, two years remain before the expiration of the period of limitation upon the assessment or the filing of claim for refund for the taxable year. The tax previously determined shall be ascertained in accordance with section 452(d). The amount to be assessed and collected under this section in the same manner as if it were a deficiency or to be refunded or credited in the same manner as if it were an overpayment, shall not be diminished by any credit or set-off based upon any item, inclusion, deduction, credit, exemption, gain or loss, other than one resulting from the effect of subsection (a) or subsection (b), as the case may be. Such amount, if paid, shall not be covered by a claim or suit for refund, or suit for erroneous refund based upon any item, inclusion, deduction, credit, exemption, gain or loss, other than one resulting from the effect of subsection (a) or subsection (b), as the case may be."

Computing its excess profits taxes for the years involved under the accrual method resulted, plaintiff contends, in an underpayment of $649.97 for the year 1950, and an overpayment in the total amount of $24,117.78 for the years 1951

through 1953. On October 12, 1955, the day preceding the filing of the amended returns, the plaintiff filed refund claims for the years 1951 through 1953, seeking to recover the $24,117.78 based on the contention that it had exercised the election to use the accrual method in its amended returns.

On November 28, 1955, taxpayer received a statement of income tax due (Form 17a) for $831.97 reflecting a deficiency for 1950 of $649.97 plus interest of $182.00. On December 8, 1955, plaintiff paid the deficiency plus interest, pursuant to the said demand.

Each of the claims for refund was rejected in full on October 1, 1957, according to the manner prescribed by law and the plaintiff thereafter timely brought the instant suit.

The questions presented in the case are: (1) whether the election was timely exercised; and (2) whether the acceptance by the Commissioner of the amended return for 1950, and his assessment of a deficiency for that year constituted a waiver and estoppel of the Commissioner to question the timeliness of the election?

If we find that the Commissioner did in fact waive any procedural irregularities by accepting the amended return for 1950, then it is not necessary to determine whether the election was timely. Therefore, we will first discuss the waiver question.

Section 455(a) provides that the taxpayer in computing excess profits taxes "may elect, in its return for the taxable year," to use the accrual method in lieu of the installment basis. The taxpayer, admittedly, did not so elect in any of its original returns for the years involved, the only years the tax was in effect.

Neither Section 455, nor the regulations promulgated pursuant thereto specified a period within which an amended return could be filed, or what the effect of such a return would be. Whereas the filing of amended returns under the 1939 Code was not a matter of right, in such circumstances, their acceptance

or rejection has been considered a matter of internal administration, solely within the discretion of the Commissioner of Internal Revenue, Schell & Co. v. United States, D.C., 129 F.Supp. 137; Levy v. United States, 3 Cir., 271 F. 942; Kunkel & Co., Inc., 3 B.T.A. 133.

We think that the defendant is in error when it urges that it would have been a clear abuse of authority for the Commissioner to have allowed the election to be made more than four years after the due date of the original return.

In so urging, the defendant relies on Riley Inv. Co. v. Commissioner, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36. That case is clearly distinguishable from the case at bar. There, in the computation of net income from mines, the statute permitted deductions for depletion on a percentage basis provided that the taxpayer in making his "first return" under the Act elected to so do. The Supreme Court held that the words "first return" required election within the due date of the original return. Here, the language used allowed the election to be made in any taxable year covered by the excess profits tax, and there was no "first return" requirement.

The respective purposes of the two enactments were also markedly different. The requirement to elect in the first-year after the enactment of Section 114(b) (4) of the Revenue Act of 1934, 26 U.S.C.A. § 114(b) (4), was designed to put all competitors on an equal basis, Mother Lode Coalition Mines Co. v. Commissioner, 317 U.S. 222, 63 S.Ct. 179, 87 L.Ed. 227. In enacting Section 455(a) Congress intended to allow taxpayers with income from installment sales made prior to June 30, 1950, to exclude this income from the excess profits tax by using the accrual method. Mertens, Law of Federal Income Taxation, Vol. 7A, § 42.59, pp. 195–96 (1955 Ed.), citing H.R.Rep. No. 3142, 81st Cong., 2d Sess. 13–14 (1950).

The defendant contends that it cannot be said on the basis of the record in the case that the assessed deficiency for 1950 was founded upon an election in the

amended return. It is contended that all that can be supported is that the District Director's Office issued a routine notice that the plaintiff stated it owed more taxes than it had paid for the year 1950, and that such taxes were paid as soon as the plaintiff received the notice.

█ We cannot agree with this interpretation. Each of the four amended returns had attached to it a Schedule EP–1 which contained the phrase "Pursuant to election under Section 455." This made it plain that the amended return was being filed pursuant to the election allowed by Section 455. When the deficiency was assessed for 1950, it amounted to an acceptance of the amended return for that year, as the only basis upon which a deficiency could be assessed was a recognition of the election, the Statute of Limitations having run on any grounds for deficiency arising from the original return. In accepting the amendment, we do not think that the Commissioner abused his discretionary power.

By accepting the amended return for 1950, the Commissioner, in our view, waived the timeliness of the election, and cannot now deny the applicability of the election to the taxable years 1951, 1952, and 1953.

The Commissioner and his authorized agents must be presumed to know the effect of the Section 455(a) election. The fact that amended returns for each of the four years involved were filed together should have put defendant on notice that each tax year did not stand alone as regarded the excess profits tax.

In situations similar to this one, the courts have generally been reluctant to allow a taxpayer to have the benefit of hindsight in making an election. However, Section 455 by its very language gave the taxpayer that benefit. Had the plaintiff exercised the election for the first time in its original return for 1953, it would have had to go back and adjust its excess profits tax for the years 1950, 1951, and 1952. If the taxpayer must be consistent under Section 455, then the Commissioner too must be consistent.

He cannot take advantage of the election for the tax year 1950, and deny its applicability to the three subsequent years. Section 455(a) provides that the "election shall be irrevocable when once made and shall apply also to all subsequent taxable years to which this subchapter is applicable * * *."

As an affirmative defense, defendant argues that the claim for refund for the taxable year 1951, was not timely filed. This argument must fall, as Section 455(c) allows two years from the date of election within which to file a claim for refund. Since the election was made in the amended return of October 13, 1955, plaintiff's claim for refund was timely.

Plaintiff is entitled to recover, with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LITTLETON (Retired) and MADDEN, Judges, concur.

WHITAKER, Judge (dissenting).

I am unable to agree with the majority. Section 455(a) of the Excess Profits Tax Act of 1950 provides that: "Any taxpayer computing income from instalment sales under the method provided by section 44(a) * * * may elect, *in its return for the taxable year*, * * * to compute * * * its income from instalment sales or instalment sales obligations on the basis of the taxable period for which such income is accrued * * *." (Italics supplied.) The "return for the taxable year", in the case of a corporation making its return on the basis of a calendar year, is the one the law requires it to file on March 15 following the taxable year. The tax law does not make any provision for amended returns.

Hence, the election must be made when the return for the taxable year is filed. The statute does not confer on the Commissioner the authority to extend the time. He could not have done so directly,

nor can he do so indirectly by allowing the filing of the amended return, nor even by assessing the tax shown to be due on the amended return for one of the years.

It must be confessed that the action of the Commissioner, in assessing the tax due on the amended return and denying a refund of the overpayment shown to have been made in subsequent years, was completely inconsistent. However, the Commissioner neither directly nor indirectly can set aside a requirement laid down by Congress. That requirement is that the election be made in the "return for the taxable year", and there is no escape from the conclusion that Congress was referring to the return that every taxpayer is required to file for the taxable year and not to some amended return not mentioned in the statute but which the Commissioner permitted it to file later on.